780 So.2d 454 (2001)
Betty Jean HARGROVE, Individually and as Natural Tutrix of Jessica Banks
v.
MISSOURI PACIFIC RAILROAD COMPANY, d/b/a Union Pacific Railroad Co., Southern Pacific Transportation Company and Tommy Comeaux.
No. 00-0228.
Court of Appeal of Louisiana, Third Circuit.
January 10, 2001.
Rehearing Denied March 28, 2001.
*456 Elizabeth Hardy, Robert W. Thomas, Thomas and Hardy, Thomas E. Townsley, Rex D. Townsley, The Townsley Law Firm, Lake Charles, LA, Counsel for Plaintiff/Appellee, Betty Jean Hargrove, Individually and as Natural Tutrix of Jessica Banks.
Sera H. Russell, III, Lafayette, LA, Counsel for Plaintiff/Appellee, Ricky Haley.
Thomas J. Solari, Woodley, Williams, Boudreau, Norman, Brown & Doyle, Lake Charles, LA, Counsel for Plaintiff/Appellee, Ricky Haley and Defendant/Appellee, Progressive Security Insurance Company.
John E. McElligott, Jr., John T. Andrishok, Davidson, Meaux, Sonnier, McElligott & Swift, Lafayette, LA, Counsel for Defendant/Appellant, Missouri Pacific Railroad Company, d/b/a Union Pacific Railroad Co., Southern Pacific Transportation Co., and Tommy Comeaux (Appellee).
L. Paul Foreman, Raggio, Cappel, Chozen & Berniard, Lake Charles, LA, James L. Pate, Laborde & Neuner, Lafayette, LA, Counsel for Defendant/Appellant, St. Paul Fire and Marine Ins. Co.
Robert M. Mahony, Onebane, Bernard, Torian, Diaz, McNamara & Abell, Lafayette, LA, Counsel for Defendant/Appellee, City of Jennings.
John Nickerson Chappuis, Voorhies & Labbe', Lafayette, LA, Counsel for Defendant/Appellee, Burlington Northern and Santa Fe Railway Company.
Lavon D. Raymond, Baton Rouge, LA, Counsel for Intervenor/Appellee, State of Louisiana, Department of Health and Hospitals.
Court composed of Judge THIBODEAUX, Judge SAUNDERS and Judge AMY.
THIBODEAUX, Judge.
The plaintiffs allege that they were injured as passengers in a rental vehicle driven by the defendant driver. They maintain that the vehicle involved in the automobile/train collision was co-rented as a replacement vehicle by the driver and automobile dealership where the driver had taken his own vehicle to be repaired. The dealership's insurer, a defendant in the suit, denies that the driver was an insured. Acting upon cross-motions for summary judgment filed by the plaintiffs and the defendant insurance company, the trial court found the driver of the rental vehicle and the dealership to be co-renters and the driver an uninsured motorist under the dealership's insurance policies. The insurance company appeals that judgment.
We affirm the judgment of the trial court.

I.

FACTS
This matter originates from a collision occurring on September 26, 1996, between a train and a rental car driven by Ricky Haley. The plaintiffs, Betty Jean Hargrove and her daughter, Jessica Banks, were passengers in the vehicle and allege they sustained injuries as a result of the accident. Suit was filed against Mr. Haley, his automobile insurer, the City of Jennings, Southern Pacific Transportation Company (hereinafter "Southern Pacific"), the company owning and operating the train and tracks, and St. Paul Fire & Marine Insurance Company (hereinafter "St. Paul"). The latter defendant, St. Paul, is the insurer for Martin Automotive Group (hereinafter "Martin"), an automobile dealership where Mr. Haley had taken his vehicle for repair. The plaintiffs contend that the company's liability policy issued to Martin insured Mr. Haley due to the circumstances under which he was driving the rental car in which they were traveling.
At the time Mr. Haley took his own automobile into Martin for repairs, Martin had a verbal agreement with Enterprise Rent A Car (hereinafter "Enterprise") whereby, in some circumstances, Martin would contact Enterprise for customers *457 receiving automotive repair at the dealership and make provisions for the rental of a vehicle for the customer. Martin would pay a portion of a car's rental cost, while the customer would pay the remaining portion. In Mr. Haley's case, an Enterprise employee was sent to Martin to return Mr. Haley to Enterprise where the vehicle involved in the accident was rented. A purchase order from Martin was also completed indicating that Martin agreed to a two-day rental with Martin paying ten dollars and Mr. Haley paying fifteen dollars per day. Two days later, and while driving the Enterprise vehicle, the accident occurred.
The plaintiffs allege that Mr. Haley and Martin were co-renters of the vehicle and, thus, the $1,000,000 liability policy and $4,000,000 excess policy issued to Martin by St. Paul provided coverage. The plaintiffs and St. Paul filed cross-motions for summary judgment on the issue of whether the St. Paul policies provided coverage for Mr. Haley in the crash. Following a hearing, the trial court found coverage, granting the motion for summary judgment filed by the plaintiffs and denying the motion filed by St. Paul.[1] St. Paul appeals this judgment.

II.

ISSUES
The issues presented for review are: (1) Did the trial court err in finding that Martin Imports and Ricky Haley were co-renters or co-lessees of the vehicle being driven by Ricky Haley at the time of the accident? and (2) Did the trial court err in finding that there is coverage for Ricky Haley under the policy of insurance issued by St. Paul to Martin Imports?

III.

LAW AND DISCUSSION

Standard of Review
Appellate courts review summary judgments de novo, using the same criteria applied by the trial court in determining whether summary judgment is appropriate. Tugwell v. State Farm Ins. Co., 609 So.2d 195 (La.1992). A motion for summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law." La.Code Civ.P. art. 966(B).
The burden of production remains with the mover to show that no material issues of fact exist. La.Code Civ.P. art. 966(C)(2). Once the mover has made a prima facie showing that the motion for summary judgment should be granted, the *458 burden of production shifts to the nonmoving party to present evidence demonstrating the existence of issues of material fact which preclude summary judgment. Hayes v. Autin, 96-287 (La.App. 3 Cir. 12/26/96), 685 So.2d 691, writ denied, 97-0281 (La.3/14/97), 690 So.2d 41.
In this case, the material facts are not contested by the parties. It is only the application of the law to those facts that is at issue.

Martin Automotive as Co-Lessee
The trial court concluded that Martin acted as a co-lessee of the Enterprise vehicle and, therefore, Mr. Haley was covered by the policies issued to Martin by St. Paul. Portions of the $1,000,000 garage liability policy pertinent to the issue of whether Haley was protected by the policy provides as follows:
What This Agreement Covers
Bodily injury and property damage liability. We'll pay amounts any protected person is legally required to pay as damages for covered bodily injury or property damage that:
 results from your garage ownership; or
 results from the ownership, maintenance, use, loading or unloading of a covered auto; and
 is caused by an accident that happens while this agreement is in effect.
. . . .

Protected Person means any person or organization who qualified as a protected person under the Who is Protected Under This Agreement section.
. . . .

Covered auto means the type or types of autos shown in the Auto Coverage Summary and described in the Which Autos are Covered section.
. . . .
Which Autos Are Covered
The Coverage Summary and Auto Schedule shows and the information in this section describes the type or types of autos which are covered autos.
Any auto means any owned, rented, leased, or borrowed auto. It includes hired, nonowned, newly acquired, replacement and temporary substitute autos.
. . . .
Hired autos means any auto that you hire, rent, lease or borrow from others, other than your employees or members or their households. We'll consider any auto that you lease for a period of 6 months or more to be an auto that you own.
. . . .
Who Is Protected Under This Agreement
. . . .
Any permitted user. Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.
However, we won't consider the following to be a protected person:
. . . .
 Any customer of yours if you own or operate an auto dealership. But we won't apply this exclusion part to Customer protection.
Customer protection. Your customer is a protected person only for the use of a covered auto if you own or operate an auto dealership. However, unless Unlimited Customer Protection is indicated in the Coverage Summary, this customer protection applies, but only for:
 the limits of coverage that are required by any compulsory or financial responsibility law where the auto is garaged if your customer doesn't have collectible auto liability insurance; or
 the difference between the limits of coverage that are available under your customer's auto liability insurance and the limits of coverage that are required by any compulsory or financial responsibility law when the customer *459 doesn't have the limits of coverage required by any compulsory or financial responsibility law.
The policy also specifically provides as follows for rental vehicles:
Automatic Coverage For Rented Autos
If your policy includes Auto Liability Protection and/or Auto Physical Damage Protection, and you rent a private passenger type auto on a weekly or daily basis, we'll automatically cover that rented auto for such coverage. If Auto Physical Damage Coverage is included, this coverage includes protection against physical damage to the auto and its equipment and loss of use of such auto.
In this assignment of error, St. Paul contests the coverage of the Enterprise vehicle arguing it was not covered because it was not an "owned, rented, leased, or borrowed auto." Specifically, St. Paul asserts that the factual background of the rental of the vehicle, as demonstrated by deposition testimony attached to the motion for summary judgment as exhibits, indicates that Martin never had possession of the vehicle nor dominion, control, or the right to direct the use of the vehicle. It contends these elements dictate whether a vehicle is leased, hired, rented, or borrowed. See Gore v. State Farm Mut. Ins. Co., 26,417, 26-,418 (La.App. 2 Cir. 1/25/95), 649 So.2d 162, writ denied, 95-0481 (La.4/21/95), 653 So.2d 555.[2] In particular, St. Paul asserts that Mr. Haley was the only authorized driver of the Enterprise vehicle and that he had "complete control" of its use. It contends that the evidence demonstrates it never had possession of the vehicle nor did it have authority to permit other drivers' to use the vehicle, even one of its own employees. Thus, St. Paul argues Mr. Haley was the sole lessee of the vehicle as he exercised exclusive control over its use. Our review of the exhibits presented indicates otherwise.
St. Paul correctly states in brief that Mr. Haley was the only authorized driver of the vehicle. However, this fact alone does not resolve the issue. Rather, the depositions presented indicate that Martin would periodically arrange for its customers to receive an Enterprise rental car for their use while their vehicle was undergoing repair work at Martin. Kenneth Martin, vice-president of operations at Martin Automotive Group, described the purpose of the program as one that fosters customer goodwill. He stated that in instances where the rental was approved by Martin, the customer's expense of renting the vehicle would be deferred by providing ten dollars per day for the rental. Although Martin explained it was up to the customer to qualify for the vehicle with the rental company, i.e., demonstrate status as a licensed and insured driver, Martin instructed Enterprise as to the number of days for which Martin would pay. When Martin assisted the customer with the rental program, a service manager or service advisor would contact Enterprise and provide a purchase order for the number of days approved. Enterprise would send an employee to Martin to pick up the customer and the purchase order would be given to the Enterprise employee. Enterprise would then bill Martin for the authorized amount and any excess was billed to the customer. The customer was responsible for additional options such as insurance.
Mr. Martin testified that, in this instance, Mr. Haley brought his 1995 Mitsubishi Eclipse in for repair, and service manager Thomas Abney determined that a portion of the rental would be paid by Martin. Mr. Abney's deposition was also offered by the plaintiffs. His testimony *460 regarding the nature of the Enterprise rentals was consistent with that offered by Mr. Martin in that he also testified that Martin would occasionally pay a portion of an Enterprise rental. He testified that the customer did not have an option as to the rental agency and explained that the customer was required to show proof that he had paid his portion of the rental in order to retrieve his own vehicle from Martin.
Enterprise Group Rental Manager, Brandon Jackson, also testified with regard to the Martin-Enterprise relationship and stated that, if the rental period needed to be extended, only Martin would be contacted for approval. If the customer was responsible for a portion of the bill, the customer was required to present a credit card or a deposit. Mr. Jackson testified that Mr. Haley was required to pay a thirty dollar deposit. Without Martin's involvement, Mr. Haley would have been required to provide a two hundred dollar cash or credit card deposit. Referencing the rental agreement in his deposition, Jackson testified that the agreement indicated that the rental period had been extended and that a service writer with Martin had approved the extension.
In considering the factors discussed above, we are mindful that Mr. Martin, Mr. Abney, and Mr. Jackson each testified that Martin did not act as a lessee and described its involvement as limited to payment of a portion of the customer's rental fee. These assertions as to their understanding of the relationship, however, do not counterbalance the remainder of the testimony regarding the factual background of the rental which indicates that Martin acted as co-lessee with Mr. Haley. St. Paul argues that Mr. Haley was the sole lessee of the vehicle as he had complete control over the vehicle's use and that Martin's involvement was only minimal. However, the testimony indicates that Martin contacted Enterprise, paid a portion of the fee, and significantly altered the relationship between Mr. Haley and Enterprise in that a different deposit was required due to Martin's involvement. The cases cited by St. Paul demonstrating the factors of control are inapplicable here in that if their application indicates Martin was not a lessee, they also indicate Mr. Haley was not a lessee. Both parties were actors here and both were essential to the rental. Neither do we find it controlling that Mr. Haley was the only authorized driver under the rental agreement. See, e.g., Bell v. Farmer's Ins. Group, 93-2067 (La.App. 4 Cir. 4/14/94), 635 So.2d 1305.
Furthermore, we are not persuaded by St. Paul's argument that it did not act as a co-lessee as the elements of La.Civ.Code art. 2670 did not exist between Martin and Enterprise. Article 2670 provides: "To the contract of lease, as to that of sale, three things are absolutely necessary, to wit: the thing, the price, and the consent." St. Paul contends that these elements existed only in the rental agreement between Mr. Haley and Enterprise. Our review of the evidence presented indicates otherwise. As explained above, Martin played a crucial role in the rental of the vehicle from Enterprise. Martin issued a purchase order for a rental car for a certain number of days and for a certain figure. To argue that Haley acted as the sole lessee ignores the reality of the situation. Thus, we find no error in the trial court's determination that Martin acted as a co-lessee, making the Enterprise vehicle one that the business "owned, rented, leased, or borrowed" for purposes of the policy. Accordingly, we turn to consideration of the remainder of the policy.

Auto Dealership Exclusion
In its alternative assignment of error, St. Paul contends that the policy excludes coverage in this instance since, even if Haley was a "permitted user" under the policy, he is excluded as a protected person since Martin operated an auto dealership. Thus, referencing the policy, St. Paul contends that any protection afforded is controlled by the two-tier provisions. *461 As set forth above, the relevant portions are as follows:
Who Is Protected Under This Agreement
. . . .
Any permitted user. Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.
However, we won't consider the following to be a protected person:
. . . .
 Any customer of yours if you own or operate an auto dealership. But we won't apply this exclusion part to Customer protection.
Customer protection. Your customer is a protected person only for the use of a covered auto if you own or operate an auto dealership. However, unless Unlimited Customer Protection is indicated in the Coverage Summary, this customer protection applies, but only for:
 the limits of coverage that are required by any compulsory or financial responsibility law where the auto is garaged if your customer doesn't have collectible auto liability insurance; or
 the difference between the limits of coverage that are available under your customer's auto liability insurance and the limits of coverage that are required by any compulsory or financial responsibility law when the customer doesn't have the limits of coverage required by any compulsory or financial responsibility law.
Based on this wording, St. Paul asserts that because Martin is an auto dealership, the policy's coverage for customers is limited to any difference between the customer's own auto liability policy, if any, and the coverage required by any financial responsibility law.[3] According to its argument in brief, the insurer contends that "because Mr. Haley had an insurance policy which met the requirements of Louisiana's *462 financial responsibility law, no coverage exists under the St. Paul policy."
The plaintiffs, as does Southern Pacific, contend that the exclusion, and limitation of the exclusion do not apply because of the "auto dealership" language. They argue that this Court's previous decision in Stanfield v. Hartford Acc. and Indem. Co., 581 So.2d 340 (La.App. 3 Cir.1991), prevents the application of the exclusion in this factual situation. In Stanfield, this Court concluded that the exclusion would not operate when a loaner vehicle was used by a customer of the garage portion of an automobile dealership. The Court concluded that the exclusion only applied to customers of the dealership portion of the business. We agree with the applicability of Stanfield to this case.
In Stanfield, a customer brought a bus into a bus dealership that also provided repair and service for vehicles. While the bus was being repaired, the business provided a loaner bus for the customer's use. During this period, the loaner bus was involved in an accident. The applicability of the bus dealership's garage liability policy, which offered two-tier coverage similar to that in this case, became an issue. This Court concluded that the covered business operated with a division-that of the auto dealership and the remainder being the service center. Because the loaner vehicle stemmed from a service center transaction, it was reasoned that the "auto dealership" exclusion, and the two-tiered coverage did not apply.
We see no reason not to follow the reasoning advanced in Stanfield. The policy issued by St. Paul divides Martin's operations into separate categories. There is coverage under the "commercial general liability protection" section of the policy with separate liability limits for separate types of claims. This section has its own insuring agreements and definitions. The St. Paul policy, then, provides for "garage coverage summary for auto dealerships," which covers "any auto" with limits of liability completely different than those provided in the "commercial general liability protection" section and with separate insuring statements and agreements.
The St. Paul policy divides Martin's operations between the auto dealership and the garage operations. This is similar to the situation in Stanfield. The only difference is that the dealership in Stanfield provided a loaner vehicle, while in this case, Martin co-rented the vehicle from Enterprise for Mr. Haley.
The St. Paul policy contains the same language found in the Stanfield case. The St. Paul policy states:
ExclusionsWhat This Agreement Won't Cover
. . . .
Leased or rented autos. We won't cover bodily injury, property damage or pollution costs or expense that results from the use of a covered auto you rent or lease to anyone.
But we won't apply this exclusion to bodily injury, property damage or pollution costs or expense that results from the use of a covered auto you loan to one of your customers because the customer's auto is left with you for repairs, service or storage.
Martin co-leased the vehicle with Mr. Haley from Enterprise while Mr. Haley's car was being repaired in Martin's repair facility. Thus, the exclusion does not apply. Also, both service managers of Martin testified that Martin's business is divided into a dealership business and a repair shop business. Mr. Haley brought his vehicle into Martin for repair. Martin performed repairs on Mr. Haley's vehicle. Thus, since Mr. Haley was driving a "covered auto," the "auto dealership" exclusion or limitation found in the St. Paul policy does not apply. Accordingly, the policy limits available to Mr. Haley are $1,000,000 per accident.
Furthermore, under the terms of the main body of the St. Paul policy and without reference to the Louisiana Endorsement, *463 in order for Mr. Haley to establish coverage, it must be shown that the rented vehicle was a covered auto as specifically defined in the "which autos are covered" portion of the policy. The 1995 Geo Prism that Martin and Mr. Haley rented together falls within the definition of "any auto" which included any owned, rented, leased or borrowed auto. Thus, the Geo Prism is a covered auto under the covered auto's section of the St. Paul policy.
Also, the Geo Prism meets the definition of hired autos which are defined as "any auto that you hire, rent, lease or borrow from others, other than your employees or members of their households." Furthermore, Martin's dominion, use and control has been established under the facts and testimony presented in this case. While Mr. Haley did operate the vehicle at the time of the accident, his control of the vehicle extended no further. Martin controlled all the decision-making authority concerning the nature of the lease involved. Martin chose Enterprise, the type of vehicle, price of the vehicle, length of the rental, and permissive drivers. All of these factors were pre-determined by Martin and Enterprise. Therefore, substantial dominion, use and control was exerted by Martin in connection with the rental vehicle. Thus, the vehicle is a covered automobile under the St. Paul policy.

Uninsured/Underinsured Motorist Coverage
St. Paul also issued umbrella excess liability protection to Martin in addition to issuing a garage liability policy of insurance. The St. Paul umbrella policy states:
We'll pay amounts any protected person is legally required to pay as damages for injury or damages that (1) is covered by this agreement; and (2) is not covered by your basic insurance. However, you'll be responsible for paying the amount of the deductible shown in the coverage summary for such damages. We'll then pay the remaining damages of coverage that applies under this agreement.
Protected Person is defined as:
Any person or organization who is a protected person under your automobile basic insurance for the use of an auto.
Since Mr. Haley is a protected person under the basic automobile provisions, there is coverage under the Umbrella policy.
Also, since liability coverage is provided to Mr. Haley and Martin as co-lessee, UM coverage attaches absent a valid rejection. La.R.S. 22:1406(D)(1)(a)(i) provides:
No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom....
Since no rejection was included in the policy nor has there been any evidence offered to establish Martin rejected UM coverage, UM coverage equal to the liability limits of $1,000,000 are applicable in favor of Mr Haley's passengers, Betty Jean Hargrove and Jessica Banks. An additional $4,000,000 in UM coverage is available pursuant to the Umbrella policy.

IV.

CONCLUSION
The trial court correctly found that no genuine issues of material fact remained as *464 to the applicability of the St. Paul liability, UM and umbrella policies. Mr. Haley brought his vehicle in to Martin for repairs, and Mr. Haley and Martin co-rented the Enterprise Geo Prism for Mr. Haley's use while Martin was repairing his vehicle. While Mr. Haley was using the co-rented vehicle he was involved in an accident. At the time of the accident, the vehicle was included in the "any auto" definition of covered automobiles in the St. Paul policy, and Mr. Haley was a permissive user. Under the language of the St. Paul policy, the Louisiana Endorsement Provision, and La.R.S. 22:1406(F),[4] Mr. Haley is a permissive user and the full limits of coverage of the St. Paul policy apply.
Thus, for the above reasons, the judgment of the trial court granting Betty Jean Hargrove's motion for partial summary judgment is affirmed with all costs of this appeal assessed to appellant, St. Paul Fire & Marine Insurance Company.
AFFIRMED.
AMY, J., dissents and assigns reasons.
AMY, J., dissenting.
While I concur in the majority's determination that Martin acted as a co-lessee of the rental vehicle, I respectfully dissent from the remainder of the opinion.
First, I differ from the majority in that I conclude that even if Ricky Haley was a "permitted user" under the policy, he is excluded as a protected person since Martin operated an auto dealership. Thus, any protection afforded is controlled by the two-tier provisions. The policy provides:
Who Is Protected Under This Agreement
. . . .
Any permitted user. Any person or organization to whom you've given permission to use a covered auto you own, rent, lease, hire or borrow is a protected person.
However, we won't consider the following to be a protected person:
. . . .
 Any customer of yours if you own or operate an auto dealership. But we won't apply this exclusion part to Customer protection.
Customer protection. Your customer is a protected person only for the use of a covered auto if you own or operate an auto dealership. However, unless Unlimited Customer Protection is indicated in the Coverage Summary, this customer protection applies, but only for:
 the limits of coverage that are required by any compulsory or financial responsibility law where the auto is garaged if your customer doesn't have collectible auto liability insurance; or
 the difference between the limits of coverage that are available under your customer's auto liability insurance and the limits of coverage that are required by any compulsory or financial responsibility law when the customer doesn't have the limits of coverage required by any compulsory or financial responsibility law.[1]
*465 (Footnote added.) In my opinion, because Martin is an auto dealership and because Haley had an insurance policy meeting the requirements of Louisiana's financial responsibility law, no coverage exists under the policy.
Unlike the majority, I would decline to follow Stanfield v. Hartford Acc. and Indem. Co., 581 So.2d 340 (La.App. 3 Cir. 1991), a case in which the court referenced Pennsylvania jurisprudence in reaching its conclusion that the two-tiered coverage provision of the policy did not apply because the vehicle at issue was loaned due to a service center transaction rather than a transaction involving the auto dealership. Rather, it seems more correct to acknowledge that the insurance policy was issued to Martin as a single entity, without divisions for service and dealership portions of the business. La.R.S. 32:1254 provides, in part:
C.(1) Applications for license as motor vehicle dealer must, in addition to the foregoing, also be accompanied by the filing with the commission of a bona fide contract or franchise in effect between the applicant and a manufacturer or distributor of the new and unused motor vehicle or vehicles proposed to be dealt in for a specific location in the state of Louisiana.
. . . .
(3) The applicant must also furnish satisfactory evidence that the applicant maintains adequate space in the building or structure wherein the applicant's established business is conducted for the display of new and unused motor vehicle, together with adequate facilities for the repair and servicing of motor vehicles and the storage of new parts and accessories for same.

(Emphasis added.) Thus, any distinction between a dealership and a service provider is fictional in this instance as an auto dealership necessarily includes service facilities. If the insurance company and the customer, in this case Martin, sought different coverage for different areas of the business, the language of the policy could have been altered to expressly provide as such. It was not. Thus, I see no authority for treating one aspect of the business different from the other. Furthermore, this reluctance to recognize a fictional division in the business has been adopted in other courts. See, e.g., Gambino v. Lamulle, 97-2798 (La.App. 4 Cir. 6/10/98), 715 So.2d 574.
Because I find applicable the exclusion and limitation of that exclusion insofar as customer protection is concerned, it is obvious that the policy could provide coverage for Haley up to the limit of the financial responsibility law. As the record evidences that Haley had insurance satisfying the financial responsibility law provision, he is not an insured and the policy provides no liability coverage given the specific facts of this situation. Accordingly, I find it necessary to reverse the summary judgment entered in favor of the plaintiffs and enter judgment in favor of St. Paul.
With regard to uninsured/underinsured motorist coverage, I first observe that this issue is not one involving the rejection of UM coverage. See Perron v. Reliance Ins. Co., 98-696 (La.App. 3 Cir. 12/9/98), 733 So.2d 7. Rather, the question is whether the $1,000,000 and $4,000,000 *466 UM coverage of the two policies affords protection where the policies provide no liability coverage. I conclude that it does not in this situation. Although the potential for coverage, albeit limited, existed in the liability policy for a customer such as Haley in that coverage would have been available for those without insurance or those who held legally insufficient policies under the financial responsibility law, Haley was not such a candidate. He had insurance sufficient to preclude any coverage by the policy. Thus, the policy afforded no liability coverage in this situation.
Although rejection or selection of lower limits is permitted, La.R.S. 22:1406(D)(1)(a)(i) requires, in part, that:
No liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle designed for use on public highways and required to be registered in this state or as provided in this Subsection unless coverage is provided therein or supplemental thereto, in not less than the limits of bodily injury liability provided by the policy, under provisions filed with and approved by the commissioner of insurance, for the protection of persons insured thereunder who are legally entitled to recover nonpunitive damages from owners or operators of uninsured or underinsured motor vehicles because of bodily injury, sickness, or disease, including death resulting therefrom....
(Emphasis added.) As I stated above, it is my opinion the policy at issue here was not one "covering liability" in this situation. Accordingly, the statute does not require UM coverage. In Magnon v. Collins, 98-2822, p. 6 (La.7/7/99), 739 So.2d 191, 196, the Louisiana Supreme Court remarked that "[a]lthough Louisiana's public policy strongly favors UM coverage and a liberal construction of the UM statute, it is well-settled that a person who does not qualify as a liability insured under a policy of insurance is not entitled to UM coverage under the policy." (Emphasis added.) Finding no liability coverage, I conclude that UM coverage is unavailable to the plaintiffs under these circumstances.
I also find no merit in the appellees' argument that La.R.S. 22:1406(F) requires coverage for the rental car at issue up to the limits on the face of the policy. At the time, the provision required:
Every insurance company, reciprocal or exchange, authorized to write automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental private passenger automobiles any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on multiple vehicles, at least one of which has comprehensive and collision insurance coverage, that comprehensive and collision substitute coverage shall apply to the temporary substitute motor vehicle or rental motor vehicle.
(Emphasis added.) As can be seen from the discussion above, the insurance policy at issue here specifically provided for coverage for rental vehicles. It also contained specific definitions for "protected persons" under the policy and those who were specifically excluded. Here, Haley, as a customer of an automobile dealership, was excluded. He was only included in the policy at all due to the narrow customer protection exception to that exclusion. This exclusion and exception applied to Haley whether he was driving a vehicle Martin owned, rented, leased, hired, or borrowed. Thus, I conclude that the policy provision, which was specifically contracted for, does not run afoul of the statute as the same coverage extended to an owned vehicle applies to a rented or leased vehicle.
For these reasons, I respectfully dissent.
NOTES
[1] The judgment contains the following:

Based upon the law and evidence and for the reasons articulated in Open Court on August 31, 1999, it is ORDERED, ADJUDGED AND DECREED that:
1. Martin Automotive Group, Inc. and Martin Imports, Inc. and Ricky Haley were co-renters or co-lessees of the vehicle from Enterprise Rent-A-Car; and
2. Ricky Haley is an insured under the St. Paul Fire & Marine Insurance Company policy # ck08601611 and the vehicle being driven at the time of this accident by Ricky Haley is afforded insurance coverage under said policy as Ricky Haley was driving a covered vehicle and was a permitted user of a covered automobile.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the St. Paul Fire & Marine Insurance Policy # ck08601611 provide insurance coverage in primary liability limits of $1,000,000.00 and $4,000,000.00 in umbrella or excess coverage, and further that St. Paul Fire & Marine Insurance Company policy # ck08601611 provides uninsured/underinsured motorist coverage (UM) in the amount of $1,000,000.00 in primary coverage and an additional $4,000,000.00 in uninsured/underinsured motorist umbrella or excess coverage as there was no uninsured/underinsured (UM) rejection signed by either Martin Automotive Group, Inc. or Martin Imports, Inc.
[2] Martin references the following quote from Gore, 26,417, 26-418, p. 5, 649 So.2d at 165:

It is clear from the cases cited that the key inquiry regarding whether a vehicle is leased, hired, rented or borrowed for purposes of the "hired auto" provision of the policy is whether the alleged lessee, hirer, renter, or borrower exercised dominion, control or the right to direct the use of the vehicle.
[3] La.R.S. 32:861 provides, in part:

A.(1) Every self-propelled motor vehicle registered in this state ... shall be covered by an automobile liability policy with liability limits as defined by R.S. 32:900(B)(2) or 900(M), or a binder for same, or by a motor vehicle liability bond as defined by Subsection B of this section, or by a certificate of the state treasurer stating that cash or securities have been deposited with said treasurer as provided by Subsection C of this Section, or by a certificate of self-insurance as provided by R.S. 32:1042.
La.R.S. 32:900 further requires:
A. A "Motor Vehicle Liability Policy" as said term is used in this Chapter, shall mean an owner's or an operator's policy of liability insurance, certified as provided in R.S. 32:898 or 32:899 as proof of financial responsibility, and issued except as otherwise provided in R.S. 32:899, by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.
B. Such owner's policy of liability insurance:
(1) Shall designate by explicit description or by appropriate reference all motor vehicles with respect to which coverage is thereby to be granted; and
(2) Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of such named insured against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle or motor vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interest and costs with respect to each such motor vehicle as follows:
(a) Ten thousand dollars because of bodily injury to or death of one person in any one accident, and,
(b) Subject to said limit for one person, twenty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and
(c) Ten thousand dollars because of bodily injury to or destruction of property of others in any one accident.
(d) An owner may exclude a named person as an insured under a commercial policy if the owner obtains an maintains in force another policy of motor vehicle insurance which provides coverage for the person so excluded which is equal to that coverage provided in the policy for which the person was excluded. The alternative coverage is required for both primary and excess insurance.
[4] Every approved insurance company, reciprocal or exchange, writing automobile liability, physical damage, or collision insurance, shall extend to temporary substitute motor vehicles as defined in the applicable insurance policy and rental private passenger automobiles any and all such insurance coverage in effect in the original policy or policies. Where an insured has coverage on multiple vehicles, at least one of which has comprehensive and collision insurance coverage, that comprehensive and collision substitute coverage shall apply to the temporary substitute motor vehicle or rental motor vehicle. Such insurance shall be primary. However, if other automobile insurance coverage is purchased by the insured for the temporary substitute or rental motor vehicle, that coverage shall become primary. The coverage purchased by the insured shall not be considered a collateral source.
[1] Although no party addresses the passage, I point out that the following is contained in a 1994 revision of the policy:

Liability ProtectionWho is Protected
If your policy includes Auto or Garage Liability Protection, the following change is made to the Any permitted user part of the Who is Protected Under This Agreement section of your agreement.
We won't apply the exception for someone whose business is an auto dealership to amounts up to the minimum financial responsibility limits required by Louisiana law.
While this passage arguably alters the application of the auto dealership provision at issue in this assignment, I do not discuss its effect, if any, on the policy due to the parties' failure to include the alteration in their arguments, whether the omission was by design or otherwise.