# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 04-0434
## CONSOLIDATED WITH
## 04-0435


**JAMES FALGOUT**

**VERSUS**

**WALTER JESTER, HAMPTON INC.,
HAMPTON AUTOMOTIVE INC. D/B/A
HAMPTON TOYOTA AND CNA INSURANCE CO.**


************

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT,
PARISH OF LAFAYETTE, NO. 20023810,
HONORABLE BYRON HEBERT, DISTRICT JUDGE

************

**JIMMIE C. PETERS
JUDGE**

************

Court composed of Jimmie C. Peters, Glenn B. Gremillion, and Billy H. Ezell, Judges.


**AFFIRMED.**

**Victor J. Versaggi
Domengeaux, Wright, Roy & Edwards
556 Jefferson Street, Suite 500
Post Office Box 3668
Lafayette, LA 70502
(337) 233-3033
COUNSEL FOR PLAINTIFF/APPELLANT:**
      **James Falgout**

**Robert L. Ellender
Attorney at Law
Post Office Box 3527
Lafayette, LA 70502**

(337) 232-9700
COUNSEL FOR DEFENDANTS/APPELLEES:
    Beau LeBlanc, Hampton Inc. And Hampton Automotive
    d/b/a Hampton Toyota

Stephen J. Moore
Richard G. Duplantier, Jr.
Peter A. Bourgeois
Galloway, Johnson, Tompkins, Burr & Smith
One Shell Square
701 Poydras Street, 40th Floor
New Orleans, LA 70139
(504) 525-6802
COUNSEL FOR DEFENDANT/APPELLEE:
    Columbia Casualty Insurance Company

PETERS, J.

James Falgout and Leon Touchet, the plaintiffs in these consolidated actions, appeal the trial court's grant of a partial summary judgment on the issue of insurance coverage in favor of one of the defendants, Columbia Casualty Insurance Company. For the following reasons, we affirm the trial court's judgment in all respects.

## DISCUSSION OF THE RECORDS

On September 14, 2001, James Falgout and Leon Touchet were both involved in a motor vehicle accident while traveling on U.S. Highway 167 in Lafayette Parish, Louisiana. They suffered personal injuries when their motorcycles[1] were struck by a vehicle owned by the Hampton Toyota dealership[2] in Lafayette, Louisiana, and being driven by Walter Jester. At the time of the accident, Jester was test driving the vehicle in contemplation of purchasing it from Hampton Toyota. Falgout and Touchet brought separate suits in an effort to recover the damages they sustained in the accident.

Falgout filed suit on July 24, 2002, and Touchet filed suit on August 14, 2002. Both men initially named Hampton Toyota, Jester, and Columbia Casualty Insurance Company (Columbia Casualty) as defendants.[3] Columbia Casualty is Hampton Toyota's general liability insurance carrier. In April of 2003, Falgout and Touchet both added Beau LeBlanc, a Hampton Toyota salesman, as a party defendant. On April 4, 2003, and before the amendments adding LeBlanc as a defendant, Hampton

---

[1]It is unclear from the pleadings whether both men were on the same motorcycle or were each operating separate motorcycles at the time of the accident. However, resolution of this factual issue is not required to dispose of this appeal.

[2]The Hampton Toyota dealership is referred to in the pleadings as Hampton, Inc., and Hampton Automotive, Inc., d/b/a Hampton Toyota. For purposes of this opinion, these entities will be referred to collectively as "Hampton Toyota."

[3]Columbia Casualty was erroneously identified in both petitions as CNA Insurance Company. However, it is not now disputed that the appropriate defendant is Columbia Casualty.

Toyota filed a motion to consolidate the two actions. The trial court executed an order to that effect on August 4, 2003.

In their original petitions, Falgout and Touchet asserted that they both had settled their claims against Jester's liability insurer, State Farm Mutual Automobile Insurance Company, and that Jester remained in the litigation "as a nominal defendant to the extent necessary to pursue the claim for excess damages." They further asserted that Columbia Casualty provided liability insurance coverage to Jester as an insured or omnibus insured under its policy.

On July 16, 2003, and before the trial court executed the consolidation order, Columbia Casualty filed separate motions for partial summary judgment in each of the pending actions. In both motions, Columbia Casualty asserted that its policy precluded liability coverage to Jester for his negligence in causing the accident. After a November 10, 2003 hearing, the trial court granted the motions and rendered judgment to the effect that the Columbia Casualty policy provided no liability coverage for Jester. In response to this ruling, Falgout and Touchet filed separate appeals. These appeals have been consolidated and are now before us. Both Falgout and Touchet have filed the same four assignments of error. The first three address the correctness of the trial court's interpretation of the policy language and the last asserts that the trial court decision is premature.

**OPINION**

Appellate courts review summary judgments *de novo* under the same criteria that govern the trial court's consideration of whether or not a summary judgment is appropriate in any given case. *Cormier v. Albear*, 99-1206 (La.App. 3 Cir. 2/2/00), 758 So.2d 250. "The summary judgment procedure is designed to secure the just,

2

speedy, and inexpensive determination of every action, except those disallowed by Article 969. The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). If there is no genuine issue as to material fact and the mover is entitled to judgment as a matter of law, the motion for summary judgment "*shall* be granted." La.Code Civ.P. art. 966(C)(1) (emphasis added).

The Columbia Casualty policy is described as both a garage coverage policy and an automobile dealer's policy. The initial declarations page identifies the policy as a "**GARAGE COVERAGE**" policy and describes Hampton Toyota as a corporation. A second declarations page located toward the end of the policy is entitled "**Auto Dealer's General Declarations**" and identifies Hampton Toyota's business as that of a "Franchised Auto Dealer." These two portions of the policy lists the various coverages provided by Columbia Casualty. The only coverage at issue in this litigation is that which might be afforded to one who has an accident while test driving a Hampton Toyota vehicle in contemplation of purchasing the vehicle.

The pages following the initial declarations page set forth the specific provisions of the policy, including the following language which appears under "**SECTION II - LIABILITY COVERAGE**:"

> **"GARAGE OPERATIONS" - COVERED "AUTOS"**
>
> We will pay all sums an "insured" legally must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from "garage operations" involving the ownership maintenance or use of covered "autos".

Garage operations is defined in the policy as follows:

> "Garage operations" means the ownership, maintenance or use of locations for garage business and that portion of the roads or other accesses that adjoin these locations. "Garage operations" includes the ownership, maintenance or use of the "autos" indicated in SECTION I

of this Coverage Form as covered "autos". "Garage operations" also include all operations necessary or incidental to a garage business.

In that same section of the policy, the definition of an "insured" appears. That definition reads in pertinent part:

**1.    Who is An Insured**

a.  The following are "insureds" for covered "autos".

(1)     You for any covered "auto".

(2)     Anyone else while using with your permission a covered "auto" you own, hire or borrow except:

. . . .

(d)     Your customers, if your business is shown in the Declarations as an "auto" dealership. However, if a customer of yours:

(i)     Has no other available insurance (whether primary, excess or contingent), they are an "insured" but only up to the compulsory or financial responsibility law limits where the covered "auto" is principally garaged.

(ii)    Has other available insurance (whether primary excess or contingent) less than the compulsory financial responsibility law limits where the covered "auto" is principally garaged, they are an "insured" only for the amount by which the compulsory or financial responsibility law limits excess the limit of their other insurance.

Columbia Casualty relies on the policy definition of an insured to deny coverage to Jester because he was a customer of the automobile dealership side of the business and he had liability coverage that exceeded the minimum limits required by state law. *See* La.R.S. 32:900.

It is not disputed that, at the time of the accident:

1.    Hampton Toyota is in the business of commercially selling vehicles.

2. Jester, in contemplation of purchasing a vehicle, was test driving one of Hampton Toyota's vehicles.

3. Columbia Casualty had in full force and effect an insurance policy issued to Hampton Toyota which included various types of insurance coverage the application of which is governed by the terms and conditions of the policy.

4. Jester was insured for liability insurance purposes with State Farm Mutual Automobile Insurance Company with policy limits of $50,000.00 per person and $100,000.00 per accident.

5. Falgout and Touchet had settled their claim against Jester's liability insurer.

In their first three assignments of error, Falgout and Touchet assert that the trial court erred in concluding that the language excluding Jester from coverage did not violate Louisiana law, that the exclusionary language was applicable to Jester, and that the language was not ambiguous. We will consider them together.

In support of their assertions, Falgout and Touchet refer this court to the decision in *Savana v. Certain Interested Underwriters at Lloyds London*, 01-2450 (La.App. 1 Cir. 7/2/02), 825 So.2d 1242. However, we find that *Savana* supports Columbia Casualty's position and answers every issue raised in the first three assignments of error.

At the time of the accident sued upon in *Savana*, Cynthia Forrester was operating a "loaner" vehicle supplied to her by Auto Depot, Inc., the garage where her vehicle was being repaired. Ms. Forrester struck a vehicle driven by Julie B. Savana who filed suit against Ms. Forrester; her liability insurer, U. S. Agencies; Auto Depot, Inc.; its insurer, Certain Interested Underwriters at Lloyds London (Lloyd's); and her own uninsured motorist carrier, Farm Bureau Mutual Insurance Company. The Lloyd's policy contained the same exclusionary language found in the Columbia Casualty policy. The trial court rejected Lloyd's request for relief from any liability

5

associated with Ms. Forrester's negligence. In reversing the trial court, the first circuit stated the following:

> In *Marcus v. Hanover Insurance Co.*, 98-2040 (La.6/4/99), 740 So.2d 603, the Supreme Court interpreted a business use exclusion in an insurance policy and stated that an insurance policy is a contract that constitutes the law between the parties. If the wording of the insurance policy is clear and expresses the intent of the parties, the policy must be enforced as written. Absent a conflict with statutory provisions or public policy, insurers are entitled to limit their liability and to impose reasonable conditions upon the obligations they contractually assume. 740 So.2d at 606.
>
> Lloyd's insurance policy unambiguously indicates that coverage to a customer of Auto Depot, Inc., which is listed as having coverage under "Garage Liability—Dealers" on the declarations page of the policy, is provided only when the customer either lacks automobile insurance or has insurance which fails to meet the minimum amount required by the Louisiana Motor Vehicle Responsibility Law, La. R.S. 32:900. Because Forrester was insured by U.S. Agencies in an amount which satisfies the statutory minimum, the exclusion in Lloyd's policy excepts Forrester from coverage under the policy.
>
> With all due respect to the majority in *Stanfield v. Hartford Acc. and Indem. Co.*, 89-1249 (La.App. 3 Cir. 5/22/91), 581 So.2d 340, this Court finds the distinction made between the auto dealership customers and the garage customers to be an artificial one, and we agree with Judge Guidry's dissent, which found no ambiguity or conflict in the provisions of the policy. Further, the facts of *Hargrove v. Missouri Pacific Railroad Company*, 2000-0228 (La.App. 3 Cir. 1/10/01), 780 So.2d 454, *writ granted*, 2001-1228 (La.6/29/01), 794 So.2d 804, are distinguishable from the case at bar in that the vehicle in *Hargrove* was a rental vehicle provided to the customer and was co-leased by the dealership, the result of which was that sections of the insurance policy at issue in that case applied to create issues of liability that are not present in this case before the Court. Therefore, we find the *Hargrove* case is not dispositive of the facts in the case at bar.
>
> Instead, we prefer to follow the opinions of the Fourth Circuit in the cases of *Gambino v. Lamulle*, 97-2798 (La.App. 4 Cir. 6/10/98), 715 So.2d 574, and *Baker v. Kenny*, 99-2950 (La.App. 4 Cir. 5/3/00), 767 So.2d 711, *writ denied*, 2000-2153 (La.10/13/00), 771 So.2d 650, which interpreted substantially the same policy language as the policy in the case at bar. We note that under La. R.S. 22:671, the primary liability coverage for a loaner vehicle is provided by the driver's policy, not the service dealer's policy. Thus, Forrester's policy which met the requirements of La. R.S. 32:900 provided the plaintiff with compensation contemplated by the Louisiana Motor Vehicle Responsibility Law. Further, because the policy provided coverage in the event the driver of the covered vehicle lacks the insurance coverage

> required by La. R.S. 32:900, we find that the language of the policy does not violate public policy and should be interpreted as written.

*Id.* at 1244-45 (footnote omitted).

*Savana*, *Gambino*, and *Baker* can be distinguished from the instant case in that, in those three cases, the vehicles at issue were vehicles loaned to the party involved in the accident to replace a vehicle under repair and not loaned for a test drive. As pointed out in *Savana*, because of that distinction, the three cases conflict with this circuit's decision in *Stanfield v. Hartford Accident & Indemnity Co.*, 581 So.2d 340 (La.App. 3 Cir. 1991).

In *Stanfield*, this circuit interpreted language similar to the Columbia Casualty language and drew a distinction between the dealership side and the garage side of the business at issue. The majority concluded that exclusionary language applied to a customer of dealership side, but did not apply to a customer of the garage side. We do not have to determine whether *Stanfield* and *Hargrove* are correct in light of *Savana, Gambino,* and *Baker* because Jester's activity arose from the dealership side of Hampton Toyota's business.

Falgout and Touchet also argue that the exclusionary language is ambiguous in that it does not define the term "customer." Citing the definition of customer found in *The Merriam-Webster Dictionary,* August 1974,[4] they argue that, because there is no evidence that Jester had done business with Hampton Toyota in the past, he is not a customer within the meaning of the Columbia Casualty exclusion. We disagree. Louisiana Civil Code Article 2047 provides that when interpreting a contract, "[t]he words . . . must be given their generally prevailing meaning," and that "[w]ords of art

---

[4]In brief, Falgout and Touchet assert that this reference book defines a customer as one who is"a <u>regular</u> or <u>frequent</u> buyer."

and technical terms must be given their technical meaning when the contract involves a technical matter." We do not find that the term "customer" is a word of art or a technical term. Therefore, it must be given its generally prevailing meaning.

We find that the generally prevailing meaning of the word "customer" would include a person such as Jester. Additionally, while *Webster's Third New International Dictionary*, published in 1986 by Merriam-Webster Inc., contains a definition similar to that cited by Falgout and Touchet, it also contains several other definitions which would suffice to establish someone such as Jester as a "customer" of Hampton Toyota.

Considering the foregoing, we find no merit in the first three assignments of error.

In their final assignment of error, Falgout and Touchet assert that the trial court's decision was premature because issues of material fact exist that require additional clarification by discovery. They list as clarification needs whether Jester was a customer of Hampton Toyota and determination of the intention of the parties to the insurance contract given the ambiguous nature of the exclusionary language.

We first note that the litigation began in mid-2002, the motions for the partial summary judgments now before this court were filed on July 16, 2003, and these motions were not heard by the trial court until November 10, 2003. The appellate records reflect no discovery activity during that entire period. Additionally, having already determined that Jester was a customer of Hampton Toyota and that the exclusionary language is not ambiguous, we find no need for additional discovery to resolve the limited issue before us. We find no merit in this assignment of error.

**DISPOSITION**

8

For the foregoing reasons, we affirm the trial court judgment in all respects.

We assess all costs of this appeal to James Falgout and Leon Touchet.

**AFFIRMED.**