649 So.2d 162 (1995)
Dianne W. GORE, et al., Plaintiff-Appellees,
v.
STATE FARM MUTUAL INSURANCE CO., et al., Defendant-Appellants.
Roy Dean HUMPHRIES, Plaintiff-Appellee,
v.
Wayne GEORGE, et al., Defendant-Appellants.
Nos. 26,417-CA, 26,418-CA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 1995.
Writ Denied April 20, 1995.
*163 Crawford & Anzelmo by Donald J. Anzelmo, Monroe, for Louisiana Ins. Guar. Ass'n.
Paul B. Wilkins, Columbia, for Dianne W. Gore, et al.
James E. Mixon, Columbia, for Roy Dean Humphries.
Before SEXTON and STEWART, JJ., and CULPEPPER, J. Pro Tem.
SEXTON, Judge.
These two consolidated cases arise out of an automobile accident which occurred on February 20, 1989 on Louisiana Highway 147, south of Arcadia, Louisiana. By stipulation of the parties, the issues of liability and damages were bifurcated. The issue of liability was submitted to the court based upon certain depositions, exhibits, and stipulations between the parties. On the two issues presented, the trial court held that the Louisiana Worker's Compensation Act does not provide the exclusive remedy for the plaintiffs and that the liability insurance policy issued by Pelican State Mutual Insurance Company to Kenneth H. Gore Logging Co., Inc. provided insurance coverage to the 1986 one-ton vehicle owned and operated by Wayne George. We affirm in part and reverse in part and render judgment in favor of the Louisiana Insurance Guaranty Association, the statutory successor of Pelican State Mutual Insurance Company.
On February 20, 1989, Kenneth H. Gore died as a result of a head-on collision with a tractor-trailer on Louisiana Highway 147, south of Arcadia, Louisiana. Gore was driving a half-ton pickup truck and towing the defendant, Wayne George, who was driving a 1986 one-ton truck. George allowed the one-ton to go off the road thereby causing Gore's vehicle to veer into the path of the oncoming tractor-trailer. The impact killed Gore instantly. *164 A battery from Gore's vehicle was thrown from his truck through the windshield of another truck which was following George and caused injuries to Roy Dean Humphries.
Kenneth H. Gore owned and operated a logging company incorporated under the name Kenneth H. Gore Logging Co., Inc. ("Gore Logging"). Gore Logging had a contract with International Paper to cut timber from a certain tract near the scene of the accident. Gore Logging subcontracted some of the work to Wayne George Log Cutting, Inc., ("George Log Cutting"), owned and operated by Wayne George. Both Gore Logging and George Log Cutting had employees.
On the day of the accident, George's one-ton crew cab pickup broke down in Jonesboro. George and two of his employees were on the way to the job site in the truck after meeting at George's home, as was their custom. Some members of Gore's crew saw the broken down vehicle in Jonesboro and towed George and his men to the job site. Once at the job site, Gore decided that it was too wet and rainy to work, so he sent the crews home and offered to tow George's one-ton truck back to George's house. George hooked up a tow chain and the men left. The accident occurred about five miles after the men had started home.
A wrongful death action was brought by the decedent's widow, Dianne Gore, individually and as the natural tutrix of her two minor children, Anna Claire Gore and Janet Paige Gore. Named as defendants were Wayne George, State Farm Mutual Automobile Insurance Company ("State Farm"), the insurer of George Log Cutting, and Pelican Mutual Insurance Company ("Pelican"), the insurer of Gore Logging. An additional action for damages was brought by Roy Dean Humphries for personal injuries he sustained as a result of the accident. State Farm settled with the plaintiffs before trial. Pelican became insolvent and the Louisiana Insurance Guaranty Association ("LIGA") was substituted as defendant.
Defendant LIGA first contends that the trial court erred in finding that Wayne George was not an employee of Gore Logging at the time of the accident under the provisions of the Louisiana Workers' Compensation Act ("Act"), and in failing to apply the exclusive compensation remedy under the Act, thus shielding George and his insurer from tort liability. Second, LIGA contends the trial court erred in finding that the Pelican policy issued to Gore Logging covered the vehicle owned by George Log Cutting and operated by Wayne George at the time of the accident.
Defendant's first assignment of error is without merit. Even if Wayne George were a statutory employee of Gore Logging, the exclusive remedy provision of the Louisiana Workers' Compensation Act is inapplicable. A subcontractor's status as a statutory employee will not shield him from tort liability to a principal's employee. Stovall v. Shell Oil Co., 577 So.2d 732 (La.App. 1st Cir.1991), writ denied, 582 So.2d 1309 (La.1991), and authorities cited therein. Hence, even if George were a statutory employee of Gore Logging, he is not shielded from tort liability to the survivors of Kenneth Gore, an employee of Gore Logging.
In its second assignment of error, defendant contends that the trial court erred in finding that the Pelican insurance policy did not exclude coverage of George or the George vehicle. Defendant cites several policy definitions to support its argument: First, LIGA (Pelican) submits that the 1986 one-ton driven by George was not a "covered auto" under the terms of the policy, and second, that George was not an "insured" as defined by the policy.
The Pelican policy was issued to Gore Logging as a business automobile liability policy covering Gore's logging tractor and trailer. The policy also covered "hired autos" and "nonowned autos." Although title to the 1986 one-ton was in Gore's name, the trial court correctly found that George Log Cutting was the owner of the one-ton, inasmuch as George had purchased the vehicle from Gore and made monthly payments to him for the vehicle for quite some time before the *165 accident.[1] Hence, for the George vehicle to be a "covered auto" under the Pelican policy, it must be shown that it was either a "hired" or "nonowned" auto as defined by the policy.
The Pelican policy defines a "hired auto" as follows:
HIRED "AUTOS" ONLY. Only those "autos" you lease, hire, rent or borrow. This does not include any "auto" you lease, hire, rent, or borrow from any of your employees or partners or members of their households.
The trial court found that in the performance of its subcontract with Gore Logging, Wayne George Log Cutting, Inc. furnished its own truck, saws, fuel and any other material or equipment necessary for the performance of the subcontract. The court concluded that the since George supplied the equipment necessary to perform the subcontract, the 1986 one-ton Chevrolet was "hired" along with George and his men. We cannot agree with this conclusion.
We believe that the clear meaning of the policy definition of "hired autos" refers only to those vehicles which the insured has procured for his own use by agreement with the owner. This view is supported by the scant jurisprudence on this issue.
In Johnson v. Continental Casualty Co., 167 So. 114 (La.App.2d Cir.1936), this court held that where the plaintiff was hired by the parish to inspect some 20 projects and was required to furnish his own transportation for which he was paid mileage at a rate of four cents per mile for each mile used in the work, the vehicle was not a hired or leased vehicle within the meaning of the insurance policy exclusion. The court reasoned that when a thing is leased or hired, the lessor has complete control of the thing to use it as he sees fit. The four cents per mile was for the care, upkeep, expenses and deterioration of the car and could not be considered rent. Nor did the parish have any control over the car such that, for example, it could put another driver in it.
Similarly, in Chicago Insurance Company v. Farm Bureau Mutual Insurance Company of Arkansas, Inc., 929 F.2d 372 (8th Cir. 1991), the federal appellate court held that where the evidence supported the district court's conclusion that a trucking firm was an independent contractor with respect to the insured which hired it to haul grain, the trucking firm's truck was not a "hired auto" for purposes of insurance coverage carried by the insured.
Finally, we note that in Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1992), the supreme court recognized that the prevailing meaning of the term "borrow" in the context of automobile lending requires that the borrower acquire substantial possession, dominion, control, or the right to direct the use of the vehicle, and not merely that the use of the vehicle by another person was for the benefit of a purported borrower. The court was interpreting an insurance policy provision that insured anyone else "while using with your permission a covered auto you own, hire or borrow...." Schroeder, supra at 343.
It is clear from the cases cited that the key inquiry regarding whether a vehicle is leased, hired, rented or borrowed for purposes of the "hired auto" provision of the policy is whether the alleged lessee, hirer, renter or borrower exercised dominion, control or the right to direct the use of the vehicle.[2] Payment to George as a subcontractor, even presuming George factored in the wear and tear and use of his own equipment in his contract price, does not make the vehicle a hired auto under this analysis. In the instant case, the evidence is clear that Gore Logging exercised no control over George's vehicle, and that George was, in fact, an independent contractor with respect to Gore. Accordingly, we conclude that the George vehicle was not a "hired auto" within the meaning of the Pelican insurance policy.
We also find that the trial court erred in concluding that the 1986 one-ton Chevrolet *166 pick-up was covered as a "nonowned auto" within the meaning of the Pelican policy. The policy defines a "nonowned auto" as follows:
NONOWNED "AUTOS" ONLY. Only those "autos" you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes "autos" owned by your employees or partners or members of their households but only while used in your business or your personal affairs.
Thus, the sole question here is whether the 1986 one-ton was used in connection with the business of Gore Logging. The trial court found it significant that the policy definition of "nonowned autos" contains no time or place restriction, requiring only that the vehicle be used in connection with the business or personal affairs of the insured. Since the vehicle was used only to transport George, his equipment, and some of his employees from George's house to and from the job site and at the time of the accident Gore was towing the vehicle to George's home after deciding it was too wet for the men to work, we must assume that the trial court found that these facts constituted a use "in connection with the business" of Gore. We disagree.
In Whetstone v. Dixon, 616 So.2d 764 (La. App. 1st Cir.1993), writ denied, 623 So.2d 1333 (La.1993), the court held that where a deacon of a church used his own vehicle to pick up materials to be used in the remodeling of the church and caused an accident while in route to obtain the materials, the deacon's vehicle was a "covered auto" under the "nonowned `autos'" endorsement of the church's commercial general liability policy. The definition of "nonowned `autos'" in the policy was identical to the policy provision in the instant case. We note, however, that the deacon was an uncompensated servant of the church who had been assigned to oversee the construction and was specifically in the course of his duties and the church's business when the accident occurred.
Price v. Colony Insurance Company, 520 So.2d 964 (La.App. 3d Cir.1987), interpreting an identical "nonowned autos" policy provision, held that where an employee and his friend, both of whom were on duty, went on a personal mission to obtain a pack of cigarettes in an employee's vehicle and had an automobile accident while on the personal mission, the employee's vehicle was not a covered auto under the "nonowned autos" provision of their employer's business auto liability policy. The court interpreted the language of the policy to require that the accident occur while being used in the course and scope of the business of the insured. Since the mission of the two employees was simply to obtain cigarettes, the mission was not related to company business.
Finally, in Dean v. State Farm Mutual Automobile Insurance Company, 518 So.2d 1115 (La.App. 4th Cir.1987), the court found that this same "nonowned autos" policy provision in the employer's business liability policy provided coverage to plaintiffs where the car was being used by the driver in the course and scope of his employment with the insured. The plaintiff was a passenger in the vehicle and was not engaged in the course and scope of her employment with the insured, but since the vehicle was being used at the time of the accident in connection with the business of the insured, she was afforded coverage under the "nonowned auto" provision.
We are persuaded by this jurisprudence that the policy language requires that the accident occur while the "nonowned auto" is being used in the course and scope of the insured's business or personal affairs.
As we will discuss subsequently, George was not an insured. Thus, George's vehicle must have been being used in the course and scope of Gore's business to qualify under the non-owned auto provision. Gore Logging had not engaged in any of its business for the day, i.e., log cutting. Gore was simply towing the vehicle of his subcontractor to its domicile as a favor to George. Indeed, the accident occurred while in route to George's house. Under these circumstances, we cannot conclude that the George vehicle was being used in the course and scope of Gore's business when the accident occurred. Accordingly, we hold that the vehicle was not a "covered auto" within the meaning of the Pelican policy.
*167 Finally, we determine that Wayne George was not an insured within the meaning of the Pelican policy, as found by the trial court. The policy defines an insured in the "Business Auto Coverage Form," Section II A.1 as follows:
1. WHO IS AN INSURED.
The following are "insureds:"
a. You for any covered "auto."
b. Anyone else while using with your permission a covered "auto" you own, hire or borrow except
(1) The owner or anyone else from whom you hire or borrow a covered "auto." This exception does not apply if the covered "auto" is a "trailer" connected to a covered "auto" you own.
(2) Your employee if the covered "auto" is owned by that employee or a member of his or her household.
(3) Someone using a covered "auto" while he or she is working in a business of selling, servicing, repairing or parking "autos" unless that business is yours.
(4) Anyone other than your employees, partners, a lessee or borrower or any of their employees, while moving property to or from a covered "auto."
(5) A partner of yours for a covered "auto" owned by him or her or a member of his or her household.
c. Anyone else who is not otherwise excluded under paragraph b. above and is liable for the conduct of an "insured" but only to the extent of that liability.
It seems clear that for Wayne George to qualify as an insured under the aforesaid provisions, the vehicle he was driving must have been a "covered auto." Because we previously held that the George vehicle is not a covered auto under the instant policy, Wayne George is not an insured thereunder.
For the reasons stated, we affirm the trial court's finding that George was not an employee of Gore Logging, and reverse the finding that the Pelican Mutual Automobile Insurance Policy provided coverage to the 1986 Chevrolet one-ton pickup owned by George Log Cutting and operated by Wayne George. We render judgement in favor of LIGA, the statutory successor of Pelican Mutual, dismissing the plaintiffs' demands against that entity. Costs are assessed to plaintiffs.
Since we are uncertain that this case has been concluded against all defendants due to the bifurcated nature of the trial below, we will remand for further proceedings consistent with this opinion, should any defendants remain in the litigation.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED; REMANDED.
NOTES
[1] By agreement, transfer of title into George's name was to take place once payment for the vehicle was completed.
[2] This stands to reason when one considers that insurance companies issue liability coverage covering only those risks created by an insured.