759 So.2d 201 (2000)
Glenda Faye Campbell GREEN, et al.
v.
BOBBY A. FREEMAN ESTATE, et al.
No. 99-1262.
Court of Appeal of Louisiana, Third Circuit.
April 5, 2000.
*202 T. Taylor Townsend, Kelly, Townsend & Thomas, Natchitoches, LA, Counsel for Plaintiff/Appellee.
David L. White, Bossier City, LA, Luke Edwards, Lafayette, LA, Counsel for Patterson Insurance Company.
Stephen N. Elliott, Bernard, Cassisa & Elliott, Metairie, LA, Counsel for T.J. Ivey d/b/a Ivey Lumber Company and Empire Fire & Marine Insurance Company.
C. Michael Futrell, Matchett, Verbois, Futrell, Baton Rouge, LA, Counsel for Estate Thomas Green.
Darrell K. Cherry, Robert E. Kerrigan, Deutsch, Kerrigan & Stiles, New Orleans, *203 LA, Counsel for Generali Assicurazioni Generali.
Amos H. Davis, Smith and Davis, Baton Rouge, LA, William F. Bologna, Habans, Bologna & Carriere, New Orleans, LA, Counsel for James Cade and Cade Wood, Inc.
Richard A. Bailley, Assistant Attorney General, Alexandria, LA, Counsel for LA DOTD.
Robert W. Fenet, Cullen J. Dupy, W. Brett Brunson, Breazeale, Sachse & Wilson, Baton Rouge, LA, Counsel for Homestead Insurance Company, Jimmie Shell d/b/a Shell Logging.
(Court composed of NED E. DOUCET, Jr., HENRY L. YELVERTON, SYLVIA R. COOKS, JIMMIE C. PETERS, and MARC T. AMY, Judges).
YELVERTON, Judge.
This appeal raises two issues. The first is whether Thomas Green was an employee or an independent contractor. The second is whether there was coverage for Green under an insurance policy issued by Empire Fire and Marine Insurance Company.

FACTS
On November 3, 1993, Thomas Green was traveling west on Louisiana Highway 111 in Vernon Parish, driving a logging truck loaded with logs. At the same time, Bobby Freeman was also driving a logging truck on Highway 111, but he was traveling east. He was pulling a log trailer piggy back. The two vehicles collided on a bridge, killing both drivers.
Green's family filed suit against Freeman's estate, his employer, Jimmie Shell d/b/a Jimmie Shell Logging, its insurer, Homestead Insurance Company, and other defendants. Homestead and Jimmie Shell filed incidental demands against co-defendants James Cade, Cade Wood, Inc., and J & J Timber, Inc. (Cade). Incidental demands were also filed against T.J. Ivy, Jr. d/b/a T.J. Ivy, Jr. Logging, (Ivy) and Ivy's insurer, Empire Fire and Marine Insurance Company (Empire). These incidental demands were for $22,812.85, the property damage to the Freeman vehicle.
A jury found that Freeman was not negligent. This meant that Green was 100% at fault for the accident. The trial court decided the issues raised by the incidental demands. The trial court found that Green was an independent contractor. Therefore, Ivy and Cade were not vicariously liable for his tortious conduct. The court further determined that Green's vehicle was a "hired auto" and thus, a covered auto under the insurance policy issued by Empire, but that Green was not an "insured" under the policy so that Empire was not obligated to pay for the damage caused by Green. Homestead and Jimmie Shell appeal the trial court's ruling.

INDEPENDENT CONTRACTOR
Homestead and Jimmie Shell argue manifest error in the finding that Green was an independent contractor. They contend that the facts in the case support a finding that Green was an employee of Ivy and not an independent contractor. If Green was an employee of Ivy, then Ivy is vicariously liable for the tortious conduct of Green. La.Civ.Code art. 2320. However, "[a] principal generally is not liable for the offenses committed by an independent contractor while performing its contractual duties. Two exceptions to this general rule exist: (1) where the work is ultra hazardous; and (2) if the principal reserves the right to supervise or control the work of the independent contractor." Ledent v. Guaranty Nat. Ins. Co., 31,346, p. 11 (La.App. 2 Cir. 12/28/98); 723 So.2d 531, 537 (citations omitted).
"The distinction between employee and independent contractor status is a factual determination to be decided on a case-by-case basis." Fontenot v. J.K. Richard Trucking, 97-220, p. 7 (La.App. 3 Cir. 6/4/97); 696 So.2d 176, 180. A principal *204 and independent contractor relationship is established when several conditions are established: (1) there is a valid contract between the parties; (2) the work being done is of an independent nature such that the contractor may employ nonexclusive means in accomplishing it; (3) the contract calls for specific piecework as a unit to be done according to the independent contractor's own methods without being subject to control and direction of principal, except as to the result of the services to be rendered; (4) there is a specific price for the overall undertaking; and (5) a specific time or duration is agreed upon and not subject to termination at the will of either side without liability for breach. Id. at 180; Ledent, 723 So.2d 531.
"The most important inquiry is whether the principal retained the right to control the work. In applying this test, it is not the supervision and control which is actually exercised which is significant; the important question is whether, from the nature of the relationship, the right to do so exists." Ledent, 723 So.2d at 538.
T.J. Ivy testified about his working relationship with Green. Ivy cut and hauled timber exclusively for Cade for about 10 to 15 years. While working this particular tract, Ivy, who had two trucks of his own, had spare loads, so he called Green to come haul for him. This was about six weeks before the accident. Ivy testified that Green had hauled for him on other occasions.
Green had his own truck and pole trailer, but Ivy did not pay to rent the truck and trailer. Ivy cut, bunched, and loaded Green's trailer. Green was then required to deliver the load to Cade but could use whatever route he wanted. As long as there were extra loads waiting, Green was to return to pick up a load.
Ivy and Green agreed that Green would be paid by the thousand. Ivy did not directly pay Green. Green would turn in a weight ticket to Cade when he delivered a load, and Cade would make a check out to Green. The money received by Green was backed out of the checks Ivy received from Cade. Ivy paid his own drivers by the day instead of by the load.
Ivy carried Green on his workers' compensation insurance. After Green's death, Ivy filled out an accident report as the employer and put Green down as an employee, for workers' compensation purposes. Green left a widow and three children.
Green's wife also testified. She testified that Green worked exclusively for Ivy at the time he was hired, although Ivy testified that Green had hauled for other people during this six-week time period. No specific proof of other employment was offered. She acknowledged that in the past her husband had worked for different people.
We find that several characteristics of an independent contractor relationship are absent in this case. First there was not a written contract between Green and Ivy spelling out an independent contractor relationship; there was only a verbal contract of some kind. Similar to this case is Fontenot, 696 So.2d 176, in which there was also no written contract or agreement as to a specific undertaking nor was there a specific time or duration agreed upon. The worker in Fontenot was classified as an employee. Likewise, in this case there was no time duration. As long as there were extra loads, Green was expected to come back for more logs. Also, Ivy could have terminated Green at will, and Green could have told Ivy he was not available anymore. These factors suggest an employment relationship.
This case is also similar to Withers v. Timber Products, Inc., 574 So.2d 1291 (La. App. 3 Cir.), writ denied, 580 So.2d 378 (La.1991), where this court found that a truck driver who owned his own truck and was engaged by a mill to haul wood chips was an employee of the mill. Although Ivy did not tell Green which route to take, Ivy otherwise controlled Green's work. *205 Ivy directed the loading of Green's truck. Ivy also directed that Green take the lumber to Cade. It could not be taken anywhere else. Although Green provided his own truck, the manner of payment by Cade directly to Green based on the weight is most probably a reflection of this. Ivy's other two drivers who used Ivy's trucks were paid by the day, while Green was paid by the load, depending on the weight of the load. These facts connote that Green was an employee who supplied his own equipment but was otherwise controlled by Ivy.
The trial court erred in its finding that Green was an independent contractor, and we reverse that finding. The facts indicate that Green was clearly an employee of Ivy as established by the law. Therefore, we find that Ivy was vicariously liable for the damages caused by Green.

INSURANCE COVERAGE
The commercial auto policy, truckers coverage form, issued by Empire, included a "NON-OWNERSHIP LIABILITY COVERAGE ENDORSEMENT." This endorsement for the truckers coverage form provided that non-owned autos are covered autos. A non-owned auto is defined under the policy as "those `autos' you do not own, lease, hire, rent or borrow that are used in connection with your business. This includes `private passenger type autos' owned by your employees or partners or member of their households but only while used in your business or your personal affairs."
The second circuit reviewed the jurisprudence surrounding the meaning of a "hired auto" in Gore v. State Farm Mut. Ins. Co., 26,417, 26,418 (La.App. 2 Cir. 1/25/95); 649 So.2d 162, writ not considered, 95-0503 (La.4/21/95); 653 So.2d 555, writ denied, 95-0481 (La.4/21/95); 653 So.2d 555. The court determined that "the key inquiry regarding whether a vehicle is leased, hired, rented or borrowed for purposes of the `hired auto' provision of the policy is whether the alleged lessee, hirer, renter or borrower exercised dominion, control or the right to direct the use of the vehicle." Id. at 165. Also, as indicated in Gore, the fact that wear and tear and the use of Green's own equipment may have been factored into the amount paid Green, does not make the truck a hired auto.
It is clear in this case that Ivy exercised no control regarding Green's truck itself, other than to direct how the logs were to be loaded on the truck. Even though Green was employed by Ivy, Green was responsible for maintaining his own truck and could use whatever route he wanted. We find that Green's truck was not a hired or borrowed auto and therefore, the policy would provide coverage for his truck as a covered non-owned auto under the endorsement to the Empire Policy. Even Ivy admits that the Green vehicle was not a hired auto.
Furthermore, the policy specifically provided in another endorsement that "[a]ny employee of yours is an `insured' while using a covered `auto' you don't own, hire or borrow in your business or your personal affairs." This policy obviously contemplates a situation in which a trucker employee will provide his own truck.
We find that T.J. Ivy, Jr. d/b/a T.J. Ivy, Jr. Logging and Empire Fire and Marine Insurance Company are liable for the stipulated damages of $22,812.85 as damages to the truck driven by Freeman plus interest and costs, including costs of this appeal. Judgment is so rendered.
REVERSED AND RENDERED.
DOUCET, C.J., concurs.
AMY, J., dissents and assigns reasons.
AMY, J., dissenting.
I respectfully dissent from the majority and would affirm the trial court's determination that Thomas Green was acting as an independent contractor at the time of the accident. Furthermore, while I agree with the majority's determination that Green's logging truck does not fit within *206 the "Hired Auto" provision of the Ivy Logging insurance policy, a finding contrary to the trial court's determination, I would affirm the trial court's ultimate conclusion that the policy provides no coverage since Green was not an insured under the policy. In sum, I would affirm the trial court's judgment in full.