**UNITED STATES FIRE INSURANCE COMPANY, Plaintiff,**

v.

**MILOOD BEN ALI and Credit General Insurance Company, Defendants.**

**No. 99–610–CIV–JORDAN.**

United States District Court,
S.D. Florida,
Miami Division.

March 25, 2002.

**1314**

Barry L. Davis, Holly S. Harvey, Thornton Davis & Fein, Miami, FL, for United States Fire Insurance Company, plaintiff.

Stewart Dorian Williams, Angones Hunter McClure Lynch & Williams, Miami, FL, for Milood Ben Ali, Credit General Ins. Co., defendants.

ORDER GRANTING SUMMARY JUDGMENT IN FAVOR OF UNITED STATES FIRE

JORDAN, District Judge.

United States Fire Insurance Company seeks a judicial declaration that it is not obligated to indemnify Milood Ben Ali under a "Defender" commercial umbrella policy issued by it to Central Florida Equipment Rental of Dade County (Central Florida) for a judgment entered against Mr. Ben Ali in a wrongful death action brought by the estate of Lazaro Vazquez. U.S. Fire further argues that, even if Mr. Ben Ali qualifies as an "insured" under its umbrella policy, it has no obligation until Credit General, as Mr. Ben Ali's insurer, pays the amount of the "retained limit" in the amount of $1 million and until the limit of "other insurance" in the amount of $300,000 is paid, for a total of $1.3 million, or entry of a judgment against Mr. Ben Ali in excess of $1.3 million has occurred. U.S. Fire has moved for summary judgment, and Mr. Ben Ali has moved for partial summary judgment. For the reasons stated below, U.S. Fire's motion for summary judgment [D.E. 45] is GRANTED, and Mr. Ben Ali's motion for partial summary judgment [D.E. 43] is DENIED.

### I. SUMMARY JUDGMENT STANDARD

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). A material fact is one that might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Where the non-moving party fails to prove an essential element of its case for which it has the burden of proof at trial, summary judgment is warranted. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Hilburn v. Murata Elecs. North Am., Inc.,* 181 F.3d 1220, 1225 (11th Cir.1999). Thus, the task with regard to U.S. Fire's summary judgment motion is to determine whether, consider-

ing the evidence in the light most favorable to Mr. Ben Ali, the non-moving party, there is evidence on which the trier of fact could reasonably find a verdict in his favor. *See Liberty Lobby,* 477 U.S. at 251, 106 S.Ct. 2505; *Hilburn,* 181 F.3d at 1225; *Allen v. Tyson Foods, Inc.,* 121 F.3d 642, 646 (11th Cir.1997). Likewise, the task with regard to Mr. Ben Ali's motion for partial summary judgment is to determine whether, considering the evidence in the light most favorable to U.S. Fire, the non-moving party, there is evidence on which the trier of fact could reasonably find a verdict in its favor. The parties agree that Florida law applies.

## II. UNDISPUTED RELEVANT FACTS [1]

Central Florida is an equipment leasing contractor located in Dade County, Florida. In November of 1992, Dade County entered into a 90–day contract with Central Florida to provide post-Hurricane Andrew debris removal services. Specifically, the project required removing Hurricane Andrew debris from Kendall Indian Hammocks Park and transporting the debris to designated disposal sites. At the time the contract was entered into, it was well understood by both Central Florida and Dade County that Central Florida did not possess or otherwise own any of the tractor trailers that would be necessary for the transportation of the debris, and that Central Florida would hire, retain, or otherwise engage subcontractors and/or independent contractors. In order to get the trucks needed to transport the debris, Central Florida utilized the services of various truck brokers who received commissions for their services. The truck brokers were therefore intermediaries between Central Florida and the truck owners and did not, themselves, own or operate any tractor trailers or trucks.

Central Florida contracted with Alco Trucking Services (Alco), a truck broker, to arrange for performance of some of the Dade County work. Alco then contracted with another truck broker, G.T. Aggregate Hauling which, in turn, contracted with various truck owner/operators to perform the actual hauling of the hurricane debris. One of the owner/operators with whom G.T. Aggregate contracted was Mr. Ben Ali. Mr. Ben Ali owned a combination tractor-trailer truck, and employed Momodou Kasseh as the driver of the truck.

Central Florida's only contractual relationship was with Alco. It had no contractual relationship with G.T. Aggregate, Mr. Ben Ali, or Mr. Kasseh. Under its agreement with Alco, Central Florida was to pay a fixed amount per-cubic yard of debris hauled. Similarly, Alco was to pay G.T. Aggregate on a per-cubic yard basis and G.T. Aggregate, in turn, paid Mr. Ben Ali on a per-cubic yard basis.

Central Florida had no relationship with any of the other truck brokers for the Dade County project, and had no responsibility for any of the brokers' truck drivers themselves. All arrangements with respect to any individual truck driver were made by the truck brokers or the owner/operators. Central Florida did not employ the individual truck drivers, and had no responsibility for gas, tolls, insurance, maintenance, or any other expense of the individual drivers or owner/operators or their trucks. The bid documents submit-

---

1. The following facts, if not otherwise cited, are taken from U.S. Fire's statement of uncontested material facts [D.E. 46]. Pursuant to Local Rule 7.5, all material facts set forth in the statement required to be served by the moving party in a motion for summary judg-

ment are deemed admitted unless controverted by the opposing party's statement. Mr. Ben Ali and Credit General agree that these facts from U.S. Fire's statement of uncontested facts are undisputed. *See* Response to Motion for Summary Judgment at 1 [D.E. 50].

ted to Dade County represented that Central Florida would mobilize at least four loaders, two excavators, ten laborers, two supervisors, one superintendent, and sixty trucks for the project. The contract documents also required Central Florida to provide liability insurance of not less than $500,000 per occurrence "covering all owned, non-owned, and hired vehicles, used in connection with the work."

The Dade County contract further provided that the trucks would be measured to account for the truck load in cubic yards to determine the average volume each truck would carry, and that a Dade County engineer and Central Florida would reach agreement on the volume each truck could carry. The engineer would then maintain a list of approved trucks, listing their assigned unit numbers, year, make, and agreed volume. The contract required a Dade County site inspector to examine all trucks leaving the dump site and fill in a load ticket with the following information: (a) truck number, (b) contract number, (c) contractor, (d) date, (e) time departed, (f) estimated volume, and (g) bid item number corresponding to the designated dump site. To expedite the filling out of this form, the contract required that all trucks working on the project have the contractor's company name, telephone number, truck number, and measured capacity clearly displayed on the doors. Consequently, in accordance with the contractual requirements, a small cardboard placard bearing the Dade County logo, the project number for the job, the truck number, the cubic yardage, and the contractor's name (Central Florida Equipment) was taped on Mr. Ben Ali's truck, over the truck door.[2]

Each truck broker required proof of liability insurance from the individual broker or owner/operator with whom it contracted. For example, Alco was insured under a $300,000 liability insurance policy issued by Allstate Insurance Company and G.T. Aggregate was insured with Credit General under a $300,000 policy. G.T. Aggregate required Mr. Ben Ali to carry liability insurance, and in order to facilitate this requirement, G.T. Aggregate added Mr. Ben Ali as an insured under its policy with Credit General and deducted the premiums from its payments to Mr. Ben Ali.

On November 27, 1992, while hauling hurricane debris in Mr. Ben Ali's truck, Mr. Kasseh was involved in a motor vehicle accident in which Lazaro Vazquez was killed. The personal representative of Mr. Vazquez's estate filed a wrongful death action against Mr. Ben Ali, G.T. Aggregate, Alco, and Central Florida, along with others in circuit court in Dade County, Florida. At the time of the accident, Central Florida was insured by Royal Insurance Company under a business automobile liability policy with limits of $1 million per occurrence. In addition, Central Florida was covered by an umbrella policy, or "excess" insurance policy issued by U.S. Fire, with a $4 million policy limit.

Royal defended Central Florida in the state court action. And because the Vazquez estate contended that Mr. Kasseh was insured under Royal's policy, Royal provided a defense to Mr. Kasseh under a reservation of rights.[3] In January of 1997, Royal settled with the Vazquez estate, paying its $1 million policy limit in exchange for a release of liability against

---

**2.** The placard covered the sign on the door, which read "Leased: to Overland." The only information in the record on Overland is that Credit General paid $20,000 to the Vazquez estate to settle the claims against G.T. Aggregate and Overland Carriers, Inc., "another

tangentially related trucking company." *See* Statement of Undisputed Facts at 4.

**3.** Neither Mr. Vazquez's estate, nor Mr. Ben Ali, has ever claimed that Mr. Ben Ali was insured under Royal's policy with Central Florida.

Central Florida and Mr. Kasseh. In February of 1997, Credit General paid the Vazquez estate $20,000 to settle the claims against G.T. Aggregate and Overland Carriers. This left Mr. Ben Ali as the only remaining defendant in the wrongful death action. In May of 1997, Credit General agreed to provide Mr. Ben Ali a defense.[4]

The wrongful death action against Mr. Ben Ali was tried before a jury in November of 1997. Mr. Ben Ali admitted liability, so the only issue was the amount of damages. On November 19, 1997, the jury entered a verdict against Mr. Ben Ali in the total amount of $1,102,868. Credit General's counsel requested that U.S. Fire contribute to payment of the verdict, on the theory that Mr. Ben Ali was an omnibus insured under Central Florida's umbrella insurance policy. U.S. Fire declined to do so and filed this declaratory action.

In April of 1999, the Vazquez estate, Mr. Ben Ali, and Credit General entered into a settlement agreement. Under the agreement, Mr. Ben Ali and Credit General agreed to the entry of a judgment against Mr. Ben Ali in the total amount of $1,288,710, including interest and costs. The Vazquez estate, however, agreed not to record the judgment or execute on the judgment against Mr. Ben Ali or Credit General. Credit General paid the Vazquez estate $500,000 on behalf of Mr. Ben Ali, in exchange for a release of bad faith claims against Credit General. In addition, Credit General agreed to file a counterclaim against U.S. Fire on behalf of Mr. Ben Ali in this action, with Credit General and the Vazquez estate sharing the proceeds of any potential recovery.

4. Credit General initially refused to provide Mr. Ben Ali a defense, and instead, in October of 1993, filed a declaratory judgment action against G.T. Aggregate, Mr. Ben Ali, Mr. Kasseh, and the Vazquez estate in Broward County Circuit Court, seeking a declaration

## III. ANALYSIS

■ "Under Florida law, interpretation of an insurance contract, including determination and resolution of ambiguity, is a matter of law." *Dahl–Eimers v. Mutual of Omaha Life Insurance Co.*, 986 F.2d 1379, 1381 (11th Cir.1993). An insurance contract must be viewed "in its entirety," with a view "to giv[ing] every provision meaning and effect." *Id.* at 1381. Ambiguity in an insurance contract exists "if it is susceptible to two or more reasonable interpretations that can fairly be made." *Id.* "When one of these interpretations results in coverage and another results in exclusion, ambiguity exists in the insurance policy." *Id.* Any "[a]mbiguities are interpreted liberally in favor of the insured and strictly against the insurer who prepared the policy." *Prudential Property and Casualty Insurance Co. v. Swindal*, 622 So.2d 467, 470 (Fla.1993). However, "[u]nder ordinary rules of contract construction, 'a court must first examine the natural and plain meaning of a policy's language,' and an 'ambiguity does not exist simply because a contract requires interpretation or fails to define a term.'" *Carneiro Da Cunha v. Standard Fire Insurance Co.*, 129 F.3d 581, 585 (11th Cir.1997).

U.S. Fire's policy contains a provision for "named insured and insured" which provides as follows:

(2) The term "Insured" as used herein means the "Named Insured" and:

(e) any person who has your permission to use an "Automobile" owned by, loaned to, or hired for use by you, and any person or organization legally re-

that there was no coverage under its policy. Eventually, Credit General agreed that Mr. Ben Ali was an insured, provided a defense, and paid the remaining policy limits on his behalf.

sponsible for the use of that "Automobile."

Credit General and Mr. Ben Ali contend that Mr. Ben Ali is an omnibus insured under U.S. Fire's umbrella policy. They argue that because Mr. Ben Ali's vehicle was "hired" by Central Florida and Mr. Ben Ali was legally responsible for its use, Mr. Ben Ali qualifies under the policy as an "insured." *See* Milood Ben Ali Counterclaim at ¶ 16 [D.E. 8].

The term "hired" is not defined in the U.S. Fire policy, but I conclude that the natural and plain meaning of the term is not ambiguous as a matter of law. Although the parties both cite to Webster's definition of the term "hire," they cite to different editions, and consequently, different definitions of the term. Both parties agree, however, on the definition in the 5th Edition of Black's Law Dictionary: "To purchase the temporary use of a thing, or to arrange for labor or services of another for a stipulated compensation." *Black's Law Dictionary* 656 (5th Ed.1979).

■ It is undisputed that Mr. Ben Ali's truck was utilized to effectuate the removal of debris. But it is also undisputed that he was an independent contractor, and paid by G.T. Aggregate. There was, moreover, no contract between Central Florida and Mr. Ben Ali for the use of his truck or his services. As an independent contractor, Mr. Ben Ali owned his own truck and was paid per cubic yard of debris hauled. Central Florida, whose contract was with Alco, hired a company that hired owner/operators that provided transportation/hauling. Central Florida did not hire a specific truck, but rather hired the services of a broker, which then hired another broker, which then hired truck owners to provide their trucks.

"[F]or a vehicle to constitute a hired automobile, there must be a separate contract by which the vehicle is hired or leased to the named insured for his exclusive use or control." *Sprow v. Hartford Ins. Co.*, 594 F.2d 418, 422 (5th Cir.1979) (applying Louisiana law and citing *Russom v. Insur. Co. of North America*, 421 F.2d 985, 993 (6th Cir.1970)) [5]; *Fertick v. Continental Casualty Co.*, 351 F.2d 108, 110 (6th Cir.1965); *American Casualty Co. v. Denmark Foods*, 224 F.2d 461, 463 (4th Cir. 1955); *Kelly v. Phoenix Assurance Co. of N.Y.*, 225 F.Supp. 562, 565 (D.Md.1964); *American Auto. Ins. Co. v. Indemnity Ins. Co.*, 108 F.Supp. 221, 223 (E.D.Pa.1952).

In *Johnson v. Royal Indem. Co.*, 206 F.2d 561 (5th Cir.1953), the Fifth Circuit applied Louisiana law in order to determine whether a subcontractor could be considered an insured under the "hired automobile" clause of the insurance policy. It distinguished between an independent contractor and a "hired automobile" by examining whether a truck engaged in hauling gravel was under the possession or control of the named insured or under the control of the independent contractor that owned the truck, and considered various factors including:

(1) who furnished gas, oil and other maintenance for the trucks

(2) whether trucks had to be of a certain size, or whether a certain number of loads were required per day

(3) whether a trucker could leave the job in the middle of the day if he so desired

(4) who selected and paid the individual drivers

(5) whether there was authority to fire individual drivers

**5.** Cases decided by the former Fifth Circuit before October 1, 1981, and cases decided after that date by Unit B of the former Fifth Circuit are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (*en banc*); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982)

(6) whether the interest was only in the results of transporting from Point A to Point B; and

(7) whether control of the independent contractor's truck was assumed by directly loading and unloading.

*See Royal Indem. Co.,* 206 F.2d at 562. Although noting that the named insured could have stopped one of the trucks' participation in hauling if it presented a safety risk, the Fifth Circuit rejected the notion that this showed possession and control over the truck. "Courts have repeatedly held that an employer has a right to exercise such control over an independent contractor as is necessary to secure the performance of the contract according to its terms in order to accomplish the results contemplated by the parties in making the contract." *Royal,* 206 F.2d at 564.

While the record in this case shows that Central Florida could have required the individually owned trucks to participate in a safety inspection, nothing in the record shows that such an inspection ever took place, or that, if it had, it would have been anything more than the necessary "control over an independent contractor as is necessary to secure the performance of the contract." *Id.* Central Florida did not, moreover, furnish gas, oil, or maintenance for Mr. Ben Ali's truck. While the trucks were required to be of a certain size, no particular number of loads were required per day. The requirement of size was apparently related to the need to measure for payment purposes the amount of cubic feet hauled each trip, as the owner/operators were being compensated on a per-cubic foot basis. Central Florida could not have fired Mr. Kasseh, nor did it select him as a driver. Central Florida's only interest was in results—the removal of the debris from Kendall Indian Hammocks Park to the disposal sites. It is unclear from the record who was responsible for the loading of debris but it appears that the trucks' drivers were responsible for unloading/dumping debris at the disposal site. In sum, nothing in the record suggests that Central Florida assumed control of Mr. Ben Ali's truck. To the contrary, Mr. Kasseh's testimony is that he picked up keys to the truck from Mr. Ben Ali's home, that Mr. Ben Ali assigned the particular truck to him that he would drive, that Mr. Ben Ali was the person Mr. Kasseh notified if he was planning to leave work early on Fridays for his religious observance, that Mr. Ben Ali was the person who paid Mr. Kasseh, and that Mr. Ben Ali was the person that told him where he was to drive the truck. *See* Deposition of Momodou Kasseh, Exh. F at 46–51 [D.E. 51].

■ Other courts have found that hiring an independent contractor will not create insurance coverage under a "hired auto" clause. *See Toops v. Gulf Coast Marine Inc.,* 72 F.3d 483, 487 (5th Cir.1996) (applying Texas law), citing *Chicago Ins. Co. v. Farm Bureau Mutual Ins. Co.,* 929 F.2d 372, 374–75 (8th Cir.1991), and holding that as a matter of law, independent contractor could not be "hired automobile" under policy); *American Casualty Co., v. Denmark Foods,* 224 F.2d 461, 463–64 (4th Cir.1955) (applying South Carolina law) (truck used under an independent contract is not a hired auto). Here, there is no contention that Central Florida separately hired Mr. Ben Ali's truck. As a general rule, under Florida law one who hires an independent contractor is not liable for injuries sustained by that contractor's employees in their work. *See N. Van Ness, Jr. v. Independent Construction Company,* 392 So.2d 1017, 1019 (Fla.App.5th DCA 1981) (citing *Lake Parker Mall, Inc. v. Carson,* 327 So.2d 121 (Fla. 2d DCA 1976), *cert. denied* 344 So.2d 323 (1977).

In the face of these authorities, Mr. Ben Ali and Credit General cite to three Florida cases to support their contention that

Mr. Ben Ali's truck was a "hired vehicle." I do not believe, however, that the cases support their position.

In *Lumbermens Mutual Casualty Co. v. Morgan*, 513 So.2d 1283 (Fla.App.4th DCA 1987), the court considered whether an independent contractor's truck was a "hired vehicle" in a wrongful death action. It concluded that the independent contractor's truck was a hired vehicle under the named insured's policy based on the fact that if the subcontractor did not haul for the contractor, he could not haul for another without breaching his contract. *See id.* at 1284. In that case, moreover, the truck owner was hauling material in his own truck pursuant to a contract with the named insured. In this case, nothing in the record suggests that Mr. Ben Ali could not engage his trucks in different work for other brokers and on other jobs. Furthermore, Mr. Ben Ali did not have a contract with Central Florida, but instead contracted with G.T. Aggregate, which contracted with Alco, which contracted with Central Florida. I am therefore, not persuaded that the result in *Morgan* controls here.

In *Stonewall Insurance Company v. Heter*, 438 So.2d 950 (Fla. 4th DCA 1983), an employee-owned vehicle was found by the court to be a "hired vehicle" under the terms of the employer's insurance policy. Yet in that case, the employee was required to use his vehicle on company business on a daily basis as a condition of his employment, and the employer paid for repairs, maintenance and fuel. *See id.* at 951. In fact, the court noted that the result in another case—in which the provision of gasoline for an employee's vehicle did not make the car a hired vehicle for insurance purposes—was based on the fact that the use of the car was occasional and non-compulsory. *See id.* at 952 (citing *Trinity Universal Insurance Co. v. Cincinnati Insurance Co.*, 513 F.2d 915 (6th Cir.1975)). Here, the use of Mr. Ben Ali's

truck was certainly occasional and non-compulsory, as he was merely a subcontractor hired by G.T. Aggregate to haul debris for a limited period of time. He was not precluded from using his truck on other jobs or for other brokers. Nor was he an employee whose use of his vehicle was a condition of his employment. I do find the result in the *Stonewall* case distinguishable.

Finally, in *American Employers Insurance Company v. Yeomans*, 356 So.2d 1281 (Fla.App. 2nd DCA 1978), the court found that a trailer involved in an accident was a "hired vehicle" for the purpose of an exclusionary provision. *See id.* at 1286. There, the court based its decision on the fact that there was monetary consideration for the use of the trailer, and therefore, its use was not a gratuitous loan. *See id.* Mr. Ben Ali and Credit General argue that because the use of Mr. Ben Ali's truck was paid for, it should be considered a "hired vehicle." Yet the issue here is not whether Mr. Ben Ali's truck was hired by anyone, but whether it was hired by Central Florida, U.S. Fire's insured. I conclude, as a matter of law, that it was not.

U.S. Fire points to the court's decision in *Gore v. State Farm Mutual Insurance Co.*, 649 So.2d 162 (La.Ct.App.), *writ denied*, 653 So.2d 555 (La.1995), to support its contention that Mr. Ben Ali's truck was not "hired" by Central Florida. In *Gore*, a subcontractor hired by a prime contractor to haul timber was a defendant in a wrongful death action resulting from an accident involving the subcontractor's truck. *See id.* The trial court concluded that, because the subcontractor had supplied the equipment necessary to perform the subcontract, the truck was hired along with the men. *See id.* at 165. The appellate court rejected that argument, instead finding that the term "hired autos" referred only to those vehicles which the insured

procured for his own use by agreement with the owner. *See id.* After reviewing similar cases, the court found that the key inquiry was whether the alleged lessee, hirer, renter, or borrower exercised dominion, control, or the right to direct the use of the vehicle at issue. *See id.* at 165. Concluding that the subcontractor was an independent contractor, and that the insured exercised no control over the vehicle in question, the court held that the vehicle had not been "hired" within the meaning of the insurance policy. *See id.*

I find *Gore* and the Fifth Circuit's decision in *Toops* persuasive.[6] Central Florida exercised no control over Mr. Ben Ali's truck beyond the control necessary to complete the debris removal. It could not, for example, put another driver into Mr. Ben Ali's truck. It could not require Mr. Ben Ali to forego other work he chose to use his truck for, and did not pay for Mr. Ben Ali's gas or maintenance of the truck. Accordingly, I conclude that Mr. Ben Ali's truck was not a "hired vehicle" within the meaning of the U.S. Fire policy.

■ Even assuming *arguendo* that Mr. Ben Ali's truck was to be considered a "hired vehicle," there is nothing in the record that suggests that the other policy requirement—that Central Florida gave permission for the use of Mr. Ben Ali's truck—has been satisfied. Indeed, Mr. Ben Ali and Credit General contend that rather than needing to show that Central Florida granted permission to Mr. Kasseh to operate the truck, they only need show that Mr. Ben Ali was a person "legally responsible for the use of the automobile." *See* Defendants Response to U.S. Fire's Motion for Summary Judgment at 2 [D.E. 50]. Suggesting that there are two "alter-native definitions" for the term "insured" in U.S. Fire's policy may be innovative, but it is incorrect. Though it is already quoted in the beginning of this order, I will here, once again, set out the actual language of U.S. Fire's policy containing the meaning of the term "insured" for clarity's sake:

(2) The term "Insured" as used herein means the "Named Insured" and:

(e) any person *who has your permission* to use an 'Automobile' owned by, loaned to, or hired for use by you, *and* any person or organization legally responsible for the use of that 'Automobile.'

(emphasis added). Subsection (e) does not read "any person who has your permission to use an 'Automobile' owned by, loaned to, or hired for use by you, *or* any person or organization legally responsible for the use of that 'Automobile.'" If it did, then Mr. Ben Ali and Credit General would be correct in suggesting that the policy contains "alternative definitions." But the phrase contains the conjunction *"and,"* which by its plain meaning relates back to the first part of the clause and the "use of *'that'* automobile" referred to in the first part of the clause. **"That"** automobile must be one that the insured *gave permission to use,* [and] was owned by, loaned to, or was hired for use by the insured. I therefore conclude that, even if Mr. Ben Ali's truck was "hired" by Central Florida, no permission was ever granted by Central Florida to Mr. Kasseh for its use. Thus, Mr. Ben Ali is not, as a matter of law, an omnibus insured under Central Florida's umbrella insurance policy. Having concluded that Mr. Ben Ali is not covered by the umbrella

---

**6.** *See also* 8 Couch on Insurance § 118:52 (3d ed.1997) ("an automobile owned by an independent contractor who contracts with the insured to perform services for the insured is not a hired automobile, as it is owned by the contractor and is not hired or rented by the insured, or hired or rented on the insured's behalf, nor is it under the insured's use or control").

policy, it is unnecessary for me to reach the issue of whether Mr. Ben Ali has sustained a loss in excess of the retained limit, and whether U.S. Fire "drops down."

## IV. CONCLUSION

Based on this record, and taking the facts in the light most favorable to the non-moving parties, no reasonable trier of fact could find that Mr. Ben Ali qualifies as an omnibus insured under U.S. Fire's umbrella policy. Consequently, U.S. Fire is not obligated to indemnify Mr. Ben Ali under its "Defender" commercial umbrella policy issued to Central Florida for any judgment entered against Mr. Ben Ali in the Vazquez estate's wrongful death action. Accordingly, the summary judgment motion of U.S. Fire [D.E. 45] is GRANTED and the partial summary judgment motion of Mr. Ben Ali and Credit General [D.E. 43] is DENIED. A final judgment will issue by separate order.