David C. **WHEAT** and Kral Ann **Wheat**, Plaintiffs,

v.

Elmo T. **KINSLOW,** Enterprise Rent–A–Car, Enterprise Leasing Co.—Southwest, and The Western Motor Co., Inc., Defendants.

No. CIV.A.02–2025–CM.

United States District Court, D. Kansas.

Sept. 29, 2003.

H. Scott Beims, Atwood, KS, J. Bradley Hardman, Wittman & McCord, Colorado Springs, CO, for Plaintiffs.

James P. Nordstrom, Steven R. Fabert, Fisher, Patterson, Sayler & Smith, Tope-ka, KS, for Defendants.

## MEMORANDUM AND ORDER

MURGUIA, District Judge.

This action arises from a motor vehicle accident that occurred on January 18, 2000, between plaintiff David Wheat and defendant Elmo Kinslow (hereinafter "Kinslow"). Plaintiffs have sued defendants Enterprise Rent–A–Car, Enterprise Leasing Company—Southwest and the Western Motor Company, Inc., alleging liability for negligent entrustment of a vehicle to Kinslow. Plaintiffs also claim the defendants engaged in a joint enterprise and are therefore vicariously liable for the acts of Kinslow. Defendant The Western Motor Co., Inc. (hereinafter "Western") contends that plaintiffs' claims are without merit, that no joint venture between the defendants existed, that Kinslow was not Western's agent at the time of the accident, that Western did not negligently entrust a motor vehicle to Kinslow, and that the motor vehicle accident between plaintiff David Wheat and Kinslow was not proximately caused by any act or omission of Western. This matter comes before the court on Western's Motion for Summary Judgment (Doc. 48). As set forth below, Western's motion is granted.

## I. Facts [1]

As a preliminary matter, the court notes that plaintiffs' response brief fails to adequately respond to, much less controvert, defendants' statement of facts. Plaintiffs summarily deny several paragraphs of Western's statement of facts without citing to any evidentiary support, and then proceed to state their own facts, none of which Western controverts in its reply. Local Rule 56.1 requires that "[e]ach fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the oppos-

ing party relies and, if applicable, shall state the number of the movant's fact that is disputed." D. Kan. Rule 56.1(b)(1). Plaintiffs have failed to comply with these requirements. Thus, where allegedly disputed facts are not directly controverted by evidence contained in the record, the court considers those facts uncontroverted pursuant to Fed.R.Civ.P. 56. However, the court will deem Western's facts controverted to the extent that plaintiffs' own facts fairly meet the substance of Western's statement of facts and are supported by competent evidence.

In January 2000, Western and defendant Enterprise Leasing Company—Southwest (hereinafter "Enterprise") were separate and distinct legal corporate entities with no shared officers, directors or ownership in each other's stock. Western was engaged in the sale and service of automobiles; Enterprise rented vehicles to customers of Western and other dealerships in Garden City, Kansas. At that time, Enterprise maintained an office within Western's building, free of charge. Calls to Western and/or Enterprise at the Western building came through one central line and were transferred to the appropriate extension. Before Enterprise moved its office into Western's building, Western maintained a fleet of vehicles that it leased to customers while customer vehicles were in for warranty repair. Warranty coverage on newer vehicles normally included reimbursement for the cost of renting or leasing another vehicle while the customer's vehicle was undergoing warranty work.

Once Enterprise moved into the Western building, Western ceased maintenance of its fleet of vehicles and referred customers needing replacement vehicles to Enter-

---

1. The court construes the facts in the light most favorable to plaintiffs as the nonmoving party pursuant to Fed.R.Civ.P. 56.

prise. Western had no legal or contractual right to determine who was eligible to rent a vehicle from Enterprise. Rather, Enterprise made the decision whether or not to rent to Western customers who were referred. Western customers who had warranty coverage that included the cost of renting or leasing another vehicle were not required to rent vehicles from Enterprise, but instead could choose what, if any, rental company to use. When Western referred to Enterprise a customer with warranty coverage for the cost of renting or leasing a vehicle, Western issued Enterprise a check for the rental costs. Western then sought reimbursement from the manufacturer. Western received no monetary compensation or commission from Enterprise's renting or leasing of vehicles. Western notified customers when warranty repairs were complete.

Kinslow, a resident of Ulysses, Kansas, and a Western customer, had a warranty under which he was entitled to reimbursement from his automobile's manufacturer for the cost of a rental vehicle while his vehicle was in service during the warranty period. Kinslow was not an employee of either Enterprise or Western.

On January 14, 2000, Western towed Kinslow's vehicle from his home in Ulysses, Kansas, to the Western facility in Garden City, Kansas, for warranty service. On January 17, 2000, Kinslow went to the Western facility to obtain alternate transportation while his vehicle underwent the warranty service. Dennis German, a Western employee, escorted Kinslow to the Enterprise office in the Western facility to rent a replacement vehicle.

Rodney Clews was the Enterprise rental agent who assisted Kinslow that day. Mr. Clews rented a 2000 Pontiac sedan to Kinslow and allowed Kinslow to take the vehicle from the Enterprise lot. However, Mr. Clews failed to properly perform Enterprise's eligibility verification requirements for a renter between the ages of 18 and 21 (the age category in which Kinslow was included) and failed to determine whether Kinslow was an eligible renter. The rental agreement listed Kinslow as the renter and only authorized operator of the 2000 Pontiac. Kinslow signed the Enterprise rental form that represented he was personally insured, and Kinslow provided details regarding his insurance policy. Mr. Clews failed to verify Kinslow's insurance coverage and did not obtain approval for the rental from a branch manager or assistant manager.

Enterprise owned the 2000 Pontiac it rented to Kinslow. Western had no legal or contractual right to sell, convey or otherwise dispose of the 2000 Pontiac. Western did not possess or have access to a key or any other unlocking device for the 2000 Pontiac. Western had no legal or contractual right to control the operation or use of the 2000 Pontiac.

On the morning of January 18, 2000, Mr. Clews contacted Kinslow's insurance company to verify Kinslow's policy and learned that Kinslow did not have current insurance coverage. The record is unclear as to what happened next. Enterprise representative Jim McCalley testified that Mr. Clews immediately telephoned Kinslow and told him to get his insurance reinstated or return the rental vehicle. However, according to testimony from Kinslow's family, on the evening of January 18, 2000, Kinslow made a telephone call to the Western number in Garden City, Kansas, regarding the return of the rental vehicle. The person on the phone instructed Kinslow to transport the rental vehicle from his home to the Enterprise office that night or the person would call the police. Although plaintiffs claim the identity of the person to whom Kinslow spoke that evening is unknown, Western claims Enterprise's business records reveal that Kin-

slow spoke to Mr. Clews regarding return of the vehicle.

On the evening of January 18, 2000, on Kinslow's way to the Enterprise office to return the 2000 Pontiac, Kinslow crossed the center line on U.S. Highway 83 and collided head-on with plaintiff David Wheat's vehicle. At the time of the accident, Kinslow was driving the 2000 Pontiac. Western claims it did not request Kinslow to return the 2000 Pontiac. Western also claims that no Western employee spoke with Kinslow or any member of his family after Kinslow left Western's dealership on January 17, 2000, until after the accident. Warranty repairs to Kinslow's own vehicle were not complete at the time of the accident.

## II. Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). An issue of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Id.* (citing *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id.* at 670–71. In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* at 671 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

Once the movant has met this initial burden, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505; *see Adler*, 144 F.3d at 671 n. 1 (concerning shifting burdens on summary judgment). The nonmoving party may not simply rest upon its pleadings to satisfy its burden. *Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Rather, the nonmoving party must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Adler*, 144 F.3d at 671. "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.*

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut"; rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327, 106 S.Ct. 2548 (quoting Fed.R.Civ.P. 1).

## III. Discussion

### I. Joint Enterprise

Plaintiffs allege that on January 18, 2000, defendants were involved in a common enterprise to transport the 2000 Pontiac from Ulysses, Kansas, to the business location of Western and Enterprise in Garden City, Kansas. Plaintiffs claim defendants shared a common interest in arrang-

ing for transport of the 2000 Pontiac and that each defendant had the right, and exercised an equal right, to jointly control the transport of the 2000 Pontiac. Plaintiffs therefore contend that all defendants are vicariously liable for Kinslow's acts in operating the 2000 Pontiac on January 18, 2000. Western denies that any joint venture existed.

As a preliminary matter, the court notes that plaintiffs alleged in their fourth claim that *all* defendants were involved in a joint enterprise to transport the 2000 Pontiac. Similarly, plaintiffs allege the joint enterprise claim against defendants in the pretrial order. However, in their response to Western's Motion for Summary Judgment, plaintiffs did not specifically argue that a joint enterprise existed between all defendants, but chose to focus instead on the relationship between Western and Enterprise.

The pretrial order supersedes all prior pleadings and controls the subsequent course of the case. *See* Fed.R.Civ.P. 16; D. Kan. Rule 16.2. Thus, plaintiffs are bound to the claims as they are stated in the pretrial order. Therefore, in addressing plaintiffs' joint enterprise claim, the court will analyze the relationship between defendants Western, Enterprise and Kinslow in determining whether a genuine issue of material fact exists regarding the existence of a joint venture or joint enterprise.

A joint venture is defined as an association of two or more persons or corporations formed to carry out a single business enterprise for profit and may be found in the mutual acts and conduct of the parties. *Modern Air Conditioning, Inc. v. Cinderella Homes, Inc.*, 226 Kan. 70, 76, 596 P.2d 816, 822 (1979). A joint enterprise is defined as "an undertaking to carry out an act or objective which is entered into by associates under such circumstances that all have an equal voice in directing the conduct of the enterprise." *Schmid v. Eslick*, 181 Kan. 997, 1002, 317 P.2d 459 (1957). Each member of a joint venture or joint enterprise is considered the agent of the other(s), and the acts of any one member within the scope of the enterprise may be charged against the other(s). *Id.*

Kansas courts have used the terms "joint venture" and "joint enterprise" interchangeably. *See, e.g. Lightner v. Frank*, 240 Kan. 21, 25, 727 P.2d 430, 433 (1986). The difference between a joint enterprise and a joint venture is that a business relationship is necessary to create a joint venture, but not to create a joint enterprise. 46 Am.Jur.2d *Joint Ventures* § 6 (2003). Thus, a joint enterprise is a non-commercial joint venture. *Id.* In these circumstances, because the alleged common enterprise includes both commercial entities and an individual, the court will analyze the relationship of the defendants in the joint enterprise context.

Plaintiffs have the burden of proving the existence of a joint enterprise. *Nature's Share, Inc. v. Kutter Prods., Inc.*, 752 F.Supp. 371, 383 (D.Kan.1990) (citing *Yeager v. Graham*, 150 Kan. 411, 416, 94 P.2d 317 (1939)). To establish a joint enterprise between Western, Enterprise, and Kinslow, and impose vicarious liability upon Western for Kinslow's acts, plaintiffs must establish that defendants had: 1) an agreement, 2) a common purpose, 3) a community of interest, and 4) an equal right to a voice accompanied by an equal right of control over the instrumentality (in this case the 2000 Pontiac). *Lightner*, 240 Kan. at 24–25, 727 P.2d at 433 (citing *Scott v. McGaugh*, 211 Kan. 323, 327, 506 P.2d 1155 (1973)); *Klose v. Wood Valley Racquet Club, Inc.*, 267 Kan. 164, 171–72, 975 P.2d 1218, 1224 (1999). There also must be equal responsibility for the negligent operation of the vehicle, and there

can be no equal responsibility unless there is equal privilege and right to direct and control its operation. *Lightner*, 240 Kan. at 25, 727 P.2d 430, 433 (citing *Schmid*, 181 Kan. at 997, Syl. ¶ 2, 317 P.2d at 459).[2]

The facts plaintiffs allege in support of the existence of a joint enterprise between defendants include: the agreement between Western and Enterprise to provide replacement vehicles to Western's customers, the benefit Western gained by teaming with Enterprise to provide replacement vehicles to its customers and thus reducing its operating costs, and the benefit to Enterprise in consistently providing rental vehicles to Western customers. Plaintiffs claim that both Western and Enterprise exercised control over the location from which Kinslow, as a customer of Western, obtained his rental vehicle on January 17, 2000, the distance and route Kinslow traveled to rent the vehicle and subsequently return it, and the amount of time Kinslow was in possession of the vehicle. Plaintiffs further claim that, because of the relationship and agreement between Western and Enterprise, Kinslow, as an 18–year–old driver, was allowed to rent a vehicle he likely would not have been permitted to rent otherwise. Plaintiffs contend that all of these factors, combined with the fact that Kinslow was returning the 2000 Pontiac at the time he was in the accident with plaintiff David Wheat upon specific request of defendants, point to the existence of a joint enterprise between defendants.

■ The evidence on which plaintiffs rely in support of their argument that a joint enterprise existed between Western,

Enterprise and Kinslow is insufficient to create a disputed issue of material fact. First, no agreement existed between all defendants to transport the 2000 Pontiac on January 18, 2000, from Ulysses, Kansas, to Garden City, Kansas. Kinslow was not an employee of either Western or Enterprise. The rental agreement was made between Enterprise and Kinslow, with Kinslow listed as the only authorized operator of the 2000 Pontiac. Although Western made payment for the rental of the 2000 Pontiac, Western did not sign the rental agreement and had no input into the decision to rent the 2000 Pontiac to Kinslow other than recommending him to Enterprise for rental as a Western customer. Enterprise could have refused to rent a vehicle to Kinslow. Likewise, Kinslow could have rented a replacement vehicle from any rental agency pursuant to the terms of the warranty. Mr. Clews directly contacted Kinslow on January 18, 2000, after Mr. Clews learned Kinslow had no valid insurance coverage, and directed Kinslow to return the 2000 Pontiac. Western was not aware of any problem with Kinslow's rental of the 2000 Pontiac, or of Enterprise's request that Kinslow return the 2000 Pontiac, until after the accident occurred. Western had no role in Kinslow's decision to transport the 2000 Pontiac back to Enterprise on January 18, 2000.

Second, defendants had no common purpose or interest in transporting the 2000 Pontiac on January 18, 2000, from Ulysses, Kansas, to Garden City, Kansas. As noted above, Enterprise contacted Kinslow and instructed him to return the 2000 Pontiac. Western was not aware of any problems

---

**2.** The court recognizes the *Lightner* and *Schmid* cases analyzed the existence of a joint enterprise between a passenger and driver of a motor vehicle—and not between a driver of a motor vehicle and third parties as is the case here. However, the court believes an analysis of the responsibility of the parties for the operation of the vehicle, as well as the parties' right to direct and control the vehicle's operation, is applicable to the facts of this case, and does not alter or misconstrue the intent of the holdings in *Lightner* and *Schmid*.

with Kinslow's rental of the 2000 Pontiac until after the accident occurred. At the time the accident occurred, Western had not completed its warranty repairs to Kinslow's vehicle, and would have had no reason to contact Kinslow until those repairs were complete, as was Western's undisputed practice.

Third, and most importantly, defendants did not have equal control over the 2000 Pontiac at the time of the accident. Western did not own or have any rights to the 2000 Pontiac. Western was not a party to the rental agreement between Enterprise and Kinslow. Western's only role in the rental was 1) referring Kinslow to Enterprise as a customer who needed a replacement vehicle during the time his own vehicle was undergoing service and 2) paying for the rental while Western sought reimbursement for the cost of the rental directly from the manufacturer. Kinslow was not an employee of either Western or Enterprise. Western had no contact with Kinslow after Mr. German escorted him to the Enterprise office to rent the 2000 Pontiac. Western had no reason to contact Kinslow until the warranty repairs were complete on his vehicle. Western had no contact with Kinslow on the day he returned the 2000 Pontiac. Moreover, even if Western had contacted Kinslow prior to the accident to inform him the repairs on his vehicle were complete, Western would have had no control over when and where Kinslow would return the 2000 Pontiac to Enterprise, much less over the route Kinslow would have driven. Based on these facts, the court concludes that no rational jury could find that Western was a member of a joint enterprise with Kinslow and therefore liable for Kinslow's negligent operation of the 2000 Pontiac. The undisputed facts demonstrate that Western had no privilege or right to direct and control Kinslow's operation of the 2000 Pontiac at any time.

■ Even if the court focused its analysis on whether a joint venture existed between only Western and Enterprise, two commercial entities, plaintiffs' claim would still fail. First, Western and Enterprise did not have an agreement to operate a business and did not have any agreement as to the rental or use of Enterprise's vehicles other than Western referring warranty customers to Enterprise. . Second, Western and Enterprise did not share profits, losses, or expenses. Third, Western did not own the 2000 Pontiac or any other property in conjunction with Enterprise. Fourth, Western had no control over any of Enterprise's vehicles, including the 2000 Pontiac rented by Kinslow.

In *Hembree v. Tinnin,* No. Civ. A. 91–1178–MLB, 1993 WL 289215, at *3 (D.Kan. July 9, 1993), this court found that two parties who cooperated to advance their business interests did not form a joint venture. In *Hembree,* two of the defendants, Hatfield and McDonnell, Inc., who were alleged by plaintiff to be part of a joint venture, were both involved in the manure hauling business. McDonell, Inc., loaned Hatfield equipment, and Hatfield often called McDonell, Inc., for assistance with manure hauling jobs. Even though Hatfield and McDonell, Inc., maintained a joint bank account to cover maintenance costs of the loaned equipment, the parties kept their financial records separate, and the court held that the "mere cooperation between businesses d[id] not transform their relationship into a joint venture . . . . [T]he defendants' cooperation was logical and justified by business necessity." *Id.* The court finds the facts of *Hembree* directly on point with the facts at issue in this case.

The evidence in the record demonstrates that Western permitted Enterprise only to use office space in its Garden City, Kansas, dealership, and that the parties cooperated

with regard to referrals of customers needing rental vehicles while their personal vehicles underwent service at the dealership. Western customers were not required to rent replacement vehicles from Enterprise. Enterprise merely offered rental and lease services to Western customers and to other dealerships in the area. Enterprise determined its own criteria for renting or leasing to customers and was free to refuse to rent or lease vehicles to Western's customers. Western had no input into the terms of the Enterprise rental agreements and only contacted customers once warranty work was complete. Western had no control over the Enterprise vehicles and did not communicate with Enterprise customers regarding the specifics, the conditions, or the return of the rental vehicles. Western was not aware of any problems with Kinslow's rental and had no knowledge at the time of Enterprise's decision to require Kinslow to return the 2000 Pontiac.

The facts alleged by plaintiffs point to a cooperation between two businesses to advance their own interests, not participation in a joint venture or joint enterprise. Plaintiffs' evidence fails to create a genuine issue of material fact sufficient to survive summary judgment on this claim. The court holds that plaintiffs have not sufficiently established evidence of a joint enterprise between defendants, and thus grants Western's Motion for Summary Judgment as to plaintiffs' joint enterprise claim.

## B. Negligent Entrustment

Plaintiffs allege that Western negligently, carelessly and recklessly entrusted the 2000 Pontiac to Kinslow, an 18–year old driver, thereby causing the accident between Kinslow and plaintiff David Wheat. Western claims that no material facts exist to support plaintiffs' claim.

Negligent entrustment is a well recognized theory of liability in Kansas. *See McCart v. Muir*, 230 Kan. 618, 641 P.2d 384 (1982); *Fogo v. Steele*, 180 Kan. 326, 304 P.2d 451 (1956). A negligent entrustment claim is based upon the owner of a motor vehicle entrusting, lending, permitting, furnishing or supplying the vehicle to a person the owner knows, or had reasonable cause to know, to be an incompetent or a habitually careless driver. *McCart*, 230 Kan. at 620, 641 P.2d at 387; *Fogo*, 180 Kan. at 328, 304 P.2d at 452. "An incompetent driver is one, who by reason of age, experience, physical or mental condition, or known habits of recklessness, is incapable of operating a vehicle with ordinary care." *McCart*, 230 Kan. at 620–21, 641 P.2d at 387; *see also Priestly v. Skourup*, 142 Kan. 127, 45 P.2d 852 (1935).

Plaintiffs point to the fact that Western previously maintained a fleet of vehicles to provide to customers for use while their own vehicles were under warranty repair and then switched to referring those customers directly to Enterprise. Plaintiffs contend that, because Enterprise subsequently rented Kinslow the 2000 Pontiac, Western essentially provided the 2000 Pontiac to Kinslow. Plaintiffs also claim that, because of the relationship between Western and Enterprise, Kinslow, an 18–year–old driver, was permitted to rent the 2000 Pontiac from Enterprise when he would not have been permitted to do so otherwise. In particular, plaintiffs rely on Enterprise's policy of not renting to drivers in the 18 to 21 age range because of the risk associated with drivers in that age group. According to plaintiffs, Enterprise rented to 18 to 21 year-old customers only when those customers were referred to Enterprise by a preferred source such as Western. Plaintiffs claim that Western's representative, Mr. German, encouraged Mr. Clews to rent the 2000 Pontiac to Kinslow and that, as a result, Western was

instrumental in renting the vehicle to Kinslow, an 18–year–old driver. Plaintiffs also assert that Western required Kinslow to travel to the Garden City, Kansas, location to return the vehicle.

■ The court's review of the record does not reveal any evidence to indicate that Western was the owner of the 2000 Pontiac or that it had the right to entrust the vehicle to Kinslow. As the court discussed above in its analysis of plaintiffs' joint enterprise claim, Western did not own the 2000 Pontiac or have any right to control its use. Western did not sign the rental agreement with Kinslow. In fact, the rental agreement was between Enterprise and Kinslow, with Kinslow listed as the only authorized user of the 2000 Pontiac. Western did not have the power to force Enterprise to rent vehicles to its customers. Rather, Enterprise set its own criteria for rental to customers and made the final decision regarding whether it would ·rent to customers or not—even when the customer was referred from a preferred customer source such as Western. The fact that Western referred Kinslow· to Enterprise· and perhaps even encouraged Enterprise to rent him a vehicle did not change Enterprise's ability to refuse to rent to Kinslow. Moreover, Western did not control Kinslow's driving routes while he had possession of the 2000 Pontiac and had no input into the decision to instruct Kinslow to return the vehicle. Western had no control over the 2000 Pontiac and, therefore, possessed no right to entrust the vehicle to Kinslow.

Moreover, even if Western had the right to control the use of the 2000 Pontiac, there is no evidence in the record to demonstrate Western knew, prior to the accident on January 18, 2000, that Kinslow was an incompetent or careless driver. Western merely accepted Kinslow's personal vehicle for warranty work and referred him to Enterprise for a rental vehicle. Although Western knew Kinslow was 18 years old, Western was not privy to Kinslow's driving record or familiar with his driving habits. As a matter of fact, Kinslow was a validly licensed driver in the State of Kansas, and there is no evidence to suggest that Kinslow was a reckless or incompetent driver simply because of his age.

Plaintiffs argue Western knew that Kinslow was a reckless or incompetent driver simply by virtue of his age and because Enterprise rental guidelines considered 18–year–old drivers as high risk and normally ineligible to rent Enterprise vehicles. However, accepting plaintiffs' argument would endorse a per se characterization of 18–year–old drivers as reckless and/or incompetent and would, in turn, hold Western to a more stringent standard than that legally set out in Kansas for a negligent entrustment claim, simply because of Western's relationship to Enterprise as a preferred customer, which the court is unwilling to do. The court views Enterprise's decision to rent to a customer it would normally consider "high risk" as a business decision. Plaintiffs have failed to satisfy the requirement that Western knew or should have known that Kinslow was an incompetent or reckless driver. There exists no genuine issue of material fact that would preclude summary judgment on plaintiffs' negligent entrustment claim. The court grants Western's Motion for Summary Judgment on this issue.

## C. Agency Relationship between Western and Kinslow

Plaintiffs allege that Kinslow was acting as Western's agent at the time of the accident, thereby making Western vicariously liable for plaintiffs' injuries. Specifically, plaintiffs claim that, at the time of the accident, both Western and Enterprise had assumed control over the right to use

and possess the 2000 Pontiac and had directed Kinslow to return the 2000 Pontiac to Garden City, Kansas. Plaintiffs contend that, because of the joint control and authority Western and Enterprise allegedly exercised over the 2000 Pontiac in requiring its return to Garden City, Kansas, Kinslow was acting as an agent for both Western and Enterprise at the time of the accident. Western denies Kinslow was its agent in any way, and claims plaintiffs have, as a matter of law, failed to establish the existence of an agency relationship between it and Kinslow.

 An agency is defined in Kansas as "a contract, either express or implied, by which one party confides to another the management of some business to be transacted in [the] party's name, or on [the] party's account, and by which the other assumes to do business and to render an account of it." *Barbara Oil Co. v. Kan. Gas Supply Corp.*, 250 Kan. 438, 446, 827 P.2d 24, 31 (1992). The question of whether an agency existed is one of law for the court to decide; however, resolution of any factual disputes regarding the existence of an agency is left to the jury. *Hartman v. Great Cent. Ins. Co.*, 915 F.Supp. 250, 254 (D.Kan.1996). An agency relationship may be either express or implied, and plaintiffs, as the party claiming the agency existed, must establish the existence of an agency. *Barbara Oil Co.*, 250 Kan. at 448, 827 P.2d at 32; *Highland Lumber Co. Inc. v. Knudson*, 219 Kan. 366, 370, 548 P.2d 719, 722 (1976).

 Agency is express if the alleged principal party delegated authority to the alleged agent by words which expressly authorized the agent to do the delegated act. If no express authorization is found, the court must consider whether the alleged agent possessed implied power. Implied power exists when, from the facts and circumstances of the case, it appears there was an implied intention to create an

agency—regardless of whether the alleged principal denies the intention to create an agency or whether the parties themselves understood the relationship to be one of agency. *Highland Lumber Co. Inc.*, 219 Kan. at 370, 548 P.2d at 723. In *Shugar v. Antrim*, 177 Kan. 70, 74, 276 P.2d 372, 375 (1954), the Kansas Supreme Court held that an agency relationship is implied:

> if, from statements of the parties, their conduct and other relevant circumstances, it appears the intent of the parties was to create a relationship permitting the assumption of authority by an agent which, when exercised by him, would normally and naturally lead others to believe in and rely on his acts as those of the principal. While the relations may be implied from a single transaction, it is more readily inferable from a series of transactions. An agency will not be inferred because a third person assumed it existed, nor because the alleged agent assumed to act as such, nor because the conditions and circumstances were such as to make such an agency seem natural and probable.

*Id. See also Highland Lumber Co. Inc.*, 219 Kan. at 371, 548 P.2d at 723.

 Even if proof of an agency relationship exists, a principal is not automatically liable for the acts of his agent. A principal's vicarious liability for his agent's conduct is determined by the doctrine of respondeat superior. *Huenink v. Rice*, 859 F.Supp. 1398, 1405 (D.Kan.1994); *Hughes v. Jones*, 206 Kan. 82, 87–88, 476 P.2d 588, 592 (1970). Under Kansas law, this determination involves an analysis of whether the agent was engaged in the furtherance of the principal's business to such a degree that the principal had the right to direct and control the agent's activities. *Id.* The key element in this analysis is the principal's control over the agent's activities. *Id.* If the principal had

no right to direct and control the agent at the time the alleged injury occurred, the principal is not vicariously liable to third parties for the agent's negligence. *Huenink*, 859 F.Supp. at 1405; *see also Brinkley v. Farmers Elevator Mut. Ins. Co.*, 485 F.2d 1283, 1286 (10th Cir.1973).

In this case, plaintiffs contend that Western and Kinslow were co-lessees, with Western listed as the responsible party for payment under the Enterprise rental agreement. Plaintiffs claim that Western exercised control over the duration of Kinslow's rental of the 2000 Pontiac, the location from which Kinslow rented the 2000 Pontiac, the source of the rental, and the route Kinslow was required to travel to obtain and return the rental. Thus, plaintiffs claim that when Kinslow was involved in the accident on January 18, 2000, he was returning the 2000 Pontiac to Garden City as the agent of, and pursuant to the control of, Western.

In support of their agency claim, plaintiffs rely on *Hargrove v. Mo. Pac. R.R. Co.*, 780 So.2d 454 (La.Ct.App.2001), in which the Louisiana court of appeals held that a car dealership and a customer were co-lessees on a rental car leased through Enterprise for purposes of the dealership's insurance policy. *Id.* However, plaintiffs' reliance on *Hargrove* is misplaced. In *Hargrove*, the court concluded that the customer was covered under the dealership's insurance policy because the dealership and the customer were co-lessees. *Hargrove* never addressed the issue of whether the car dealership and the customer had an agency relationship.

 The undisputed facts of this case do not support the existence of an express agency agreement between Western and Kinslow. Kinslow was not Western's employee, and there is no evidence in the

record to demonstrate that Western gave Kinslow express authority to act on its behalf. The court thus turns to whether an implied agency agreement existed between Western and Kinslow. The court finds no evidence in the record that Western impliedly permitted Kinslow to act on its behalf or that Kinslow engaged in conduct that would normally and naturally lead others to believe he was acting on behalf of Western.

The undisputed facts demonstrate merely that Kinslow was Western's customer. Kinslow contacted Western and arranged for repairs to his personal vehicle. Kinslow's warranty covered the cost of a rental vehicle while his was in service. Western was not required to provide Kinslow with a replacement vehicle. Rather, Western simply referred Kinslow to Enterprise and paid the cost of the rental vehicle while it sought direct reimbursement for that cost from the manufacturer. Western was not a party to the rental agreement between Kinslow and Enterprise. Further, neither Western nor the warranty required Kinslow to rent a vehicle from Enterprise; Kinslow could have chosen any rental agency and sought reimbursement for the rental costs, or chosen to rent no replacement vehicle at all. Once Western referred Kinslow to Enterprise, Western had no further contact with him until after the accident. To hold that Western and Kinslow had an agency relationship would, in essence, create an agency relationship between every car dealership and its customers each time a dealership assisted a customer with renting a replacement vehicle. As such, even viewing the record in the light most favorable to plaintiffs, the court cannot conclude as a matter of law that Kinslow was Western's agent. Therefore, the court grants Western's Motion for Summary Judgment on this claim.[3]

---

**3.** Because the court finds no agency relationship, the court need not address whether

Western exerted the requisite direction and

## D. Proximate Cause

Plaintiffs contend that genuine issues of material fact exist regarding whether the accident between Kinslow and plaintiff David Wheat was proximately caused by any act or omission of Western. Because the court has granted summary judgment to Western on each of plaintiffs' claims, this issue is moot.

**IT IS THEREFORE ORDERED** that defendant Western's Motion for Summary Judgment (Doc. 48) is granted.

control over Kinslow's activities to impute vicarious liability.